STATE OF NEW YORK, Respondent, v PEERLESS INSURANCE COMPANY, Appellant. (Action No. 1.) (And a Third-Party Action.)

STATE OF NEW YORK, Respondent-Appellant, v PEERLESS INSURANCE COMPANY, Appellant, and INSURANCE COMPANY OF NORTH AMERICA, Respondent. (Action No. 2.) (And Three Other Related Actions.)

Third Department, February 18, 1988

APPEARANCES OF COUNSEL

*Rivkin, Radler, Dunne & Bayh (David P. Franks* of counsel), for appellant.

*Robert Abrams, Attorney-General (Denise A. Hartman* of counsel), for State of New York, respondent.

*Bigham, Englar, Jones & Houston (Kevin T. Colby* of counsel), for Insurance Company of North America, respondent.

## OPINION OF THE COURT

MAHONEY, P. J.

The State Division of the Lottery (hereinafter the Lottery) sells lottery tickets to the public through retail ticket agents. Until 1978, banks distributed lottery tickets to the various retail agents. In 1978, however, the Lottery decided to experiment with an alternate distribution system. With respect to one particular game, the Lottery decided to utilize the services

of independent distributors. The independent distributors would be given responsibility for distribution of lottery tickets within an assigned territory and would also be charged with the responsibility for the collection of money from the retail agents and for the remittance of these funds to the Lottery. The independent distributors were to receive commissions based upon their retail agents' total sales.

Shortly after the new distribution system began, the Lottery decided to expand the system to other lottery games. As a result of the expansion of the distribution system of multiple types of lottery games, the Lottery required the distributors to obtain bonding in order to protect the tickets and the proceeds therefrom (see, Tax Law § 1604 [b]; 21 NYCRR 2813.15). Subsequently, the Lottery accepted a bonding proposal from an insurance agency known as Lawley Services. Pursuant to the proposal, Peerless Insurance Company would underwrite "license and permit" bonds naming the distributor as principal, Peerless as surety and the Lottery as obligee on behalf of each independent distributor. In August 1978, Peerless determined that all of the independent distributors would be bondable.

Thereafter, problems developed with the distribution system causing Peerless to tighten its requirements for continued bonding coverage and for the submission of claims. Distributors defaulted in their financial obligations to the Lottery and the Lottery was forced to make claims against Peerless under the various license and permit bonds. The consolidated appeals before us for resolution involve litigation which resulted when Peerless denied liability concerning two of the defaulting distributors.

■ Fordham Tickets, Inc., a lottery distributorship owned by Anthony Ragusa, was a principal on two $100,000 bonds issued by Peerless as surety on September 8, 1978 and November 13, 1978. Both bonds were renewed in 1979. However, on August 29, 1980, Peerless issued notices of cancellation on both of the Ragusa bonds. Ragusa defaulted in its financial obligations to the Lottery. When the Lottery's collection efforts failed, the Lottery notified Peerless that it was making claims on the two Ragusa bonds. Peerless denied liability, arguing that the Lottery had failed to supervise the distributors. Thereafter, a default judgment against Ragusa was obtained for the amount of Ragusa's indebtedness. The Lottery then commenced action No. 1 against Peerless and, armed with the default judgment against Ragusa, moved for summary judgment in its complaint against Peerless. Supreme

Court granted the Lottery's motion and Peerless unsuccessfully sought reargument. This appeal by Peerless ensued.*

The second appeal before us arose as the result of a distributorship issued to H.E.C. Distributors, Inc. Peerless issued two $100,000 bonds to H.E.C. in 1978 and both bonds were renewed until their respective expiration dates in 1981. Peerless, however, due to intervening problems, canceled both H.E.C. bonds effective December 31, 1980. Insurance Company of North America (hereinafter INA) then assumed the risk and issued a $250,000 license and permit bond to H.E.C., effective January 1, 1981. On February 9, 1981, H.E.C. suffered a burglary resulting in a $30,000 loss of lottery tickets and proceeds. When H.E.C. was unable to account for the loss, the Lottery terminated H.E.C.'s distributorship and made a claim for H.E.C.'s total indebtedness on the two Peerless bonds and, in the alternative, on the INA bond. Both companies disclaimed liability.

Thereafter, a default judgment against H.E.C. was obtained. The Lottery then commenced action No. 2 against Peerless and INA seeking (1) a declaration as to which company's bond covered H.E.C.'s obligations, and (2) payment under the applicable bond. As in the Ragusa case, the Lottery moved for summary judgment and declaratory relief. INA cross-moved for a declaration that its bond did not cover H.E.C.'s loss and for summary judgment dismissing the Lottery's complaint against INA. Supreme Court determined that H.E.C.'s loss as a result of the burglary occurred as of the date the tickets were consigned to H.E.C. and, accordingly, that the Peerless bonds covered the loss. Supreme Court then granted INA's cross motion for summary judgment, granted the Lottery's motion for summary judgment against Peerless and declared that the loss suffered by the Lottery was covered by the bonds written by Peerless. Peerless appeals from Supreme Court's order. The Lottery has also filed a notice of appeal in the event this court finds that INA's bond covered the loss.

Peerless also moved to consolidate the Ragusa action and the H.E.C. action. Supreme Court denied the motion and Peerless also appeals that order.

■ Initially, we hold that Supreme Court erred in granting the Lottery's motion for summary judgment against Peerless

---

* [1] Peerless' appeal from the denial of its motion for reargument must be dismissed since denial of such a motion is not appealable (see, Montalvo v Key Indus., 98 AD2d 767).

in action No. 1. Once the obligee has established its prima facie right to judgment, it is incumbent upon the surety to rebut that showing by presenting proof in evidentiary form which demonstrates the existence of a triable issue of fact *(see, Bethlehem Steel Corp. v Solow,* 51 NY2d 870, 872; *Zuckerman v City of New York,* 49 NY2d 557, 562; *see also, Polyglycoat Center v Arace's Ford,* 126 AD2d 844, 845). If the surety fails to rebut the prima facie showing, the obligee will be entitled to summary judgment.

There can be no doubt that the Lottery established its prima facie right to judgment by submitting the default judgment against Ragusa. In opposition, Peerless set forth essentially two defenses. First, it alleged fraud and gross negligence in the Lottery's supervision of Ragusa. Also, Peerless submitted an affidavit from one of its former representatives which stated that an agreement existed wherein the Lottery represented that it would conduct "spot checks" concerning financial problems, if any, of distributors. The affidavit also stated that the individual did not recall ever having received audit results from the Lottery and had no knowledge of whether the "spot checks" were ever conducted. In the absence of any language in the bonds obligating the creditor to supervise a distributor, "the surety bears the burden of making inquiries and informing itself of the relevant state of affairs of the party for whose conduct it has assumed responsibility" *(State of New York v Peerless Ins. Co.,* 67 NY2d 845, 847). It is clear that Peerless has not offered sufficient proof to establish any duty on the Lottery's part to supervise Ragusa to protect the interest of Peerless.

Also, in opposition to the Lottery's motion for summary judgment, Peerless argues that in April 1980, after Ragusa had defaulted in its obligation to the Lottery, the Lottery permitted Ragusa to execute 29 promissory notes extending Ragusa's time to pay, thereby materially altering Peerless' risk and discharging Peerless as surety. As a general rule, "[w]here a binding alteration operates to extend the principal's time of payment, the surety is discharged unless he has consented thereto" *(Hall & Co. v Continental Cas. Co.,* 34 AD2d 1028, 1029, *affd* 30 NY2d 517). Here, the parties dispute whether there was any real change in Ragusa's obligation and whether Peerless was made aware of any such change. There appears to be an issue of fact on this point which cannot be resolved from this record. Thus, summary judgment was not appropriate.

■ Next, we also conclude that Supreme Court erred in its determination that Peerless alone, and not INA, was liable to the Lottery for H.E.C.'s indebtedness. As previously set forth, the Lottery had obtained a default judgment against H.E.C. which was in the amount of $150,408.62. In deciding whether Peerless or INA should be held liable for H.E.C.'s indebtedness, Supreme Court determined that the "loss", for purposes of the surety's liability, occurred on the date of the Lottery's ticket's consignment to H.E.C. Since Peerless' bonds were in effect at that time, Supreme Court concluded that Peerless should bear the liability.

Clearly, the overriding purpose of the bonding requirement is the protection of State funds. While we find rational the Lottery's contention that liability should attach on the date of consignment, because otherwise the surety could disclaim coverage before a distributor's default or complete audit (which, under the bonds, Peerless was permitted to do), which would leave the Lottery unprotected with respect to distributors who were terminating their distributorships, it nevertheless remains true that a bond's language must be reasonably interpreted according to the intent of the parties, as disclosed by the instrument read in the light of surrounding circumstances and the purpose for which it was made (see, 11 NY Jur 2d, Bonds, § 26, at 278). Here, the bonds clearly state that the surety's obligation "shall be null and void" until such time as the principal defaults in its obligation to the obligee. This language is consistent with the general rule that "[t]he liability of a surety on a bond is predicated upon a breach of the conditions of the bond which describe the obligation" (11 NY Jur 2d, Bonds, § 28, at 280). Accordingly, we hold that liability should attach under the bond(s) in effect when H.E.C. can be said to have defaulted in its obligations to the Lottery.

Here, it is clear that at least $30,000 of H.E.C.'s indebtedness (the sum representing H.E.C.'s loss in a burglary on February 9, 1981) accrued during the life of the INA bond. A careful review of the record fails to disclose when the remainder of H.E.C.'s total indebtedness accrued. Therefore, this matter should be remitted to Supreme Court for a trial to determine how liability should be apportioned between INA and Peerless, the two sureties.

■ Finally, we hold that Supreme Court did not err in denying Peerless' motion for consolidation with five similar distributorship cases that had already been consolidated. The trial of the consolidated cases was imminent and the joinder

of this case with those already scheduled for trial would have caused further undue delay. The power to order the consolidation of actions rests in the sound discretion of the trial court *(see, Fashion Tanning Co. v D'Errico & Farhart Agency,* 105 AD2d 1034, 1035) and we see no reason to interfere with the discretion exercised herein.

KANE, CASEY, WEISS and LEVINE, JJ., concur.

Judgment in action No. 1 reversed, on the law, without costs, and plaintiff's motion for summary judgment denied.

Appeal from order in action No. 1 dismissed, without costs.

Order and judgment in action No. 2 reversed, on the law, without costs, and motions denied.

Order entered February 3, 1987 affirmed, without costs.