Bert **HETCHKOP**, in his Fiduciary Capacity as Director, and the New York City District Council of Carpenters Welfare Fund, Annuity Fund, Apprenticeship, Journeyman Retraining, Educational and Industry Fund, and Supplemental Fund, Plaintiffs,

v.

**GUNDOLT CARPET WORKROOM, INC.** and Liberty Mutual Insurance Co., Defendants.

No. 92 Civ. 4830 (JES).

United States District Court, S.D. New York.

Jan. 6, 1994.

Pryor, Cashman, Sherman & Flynn, New York City (Myriamne N. Coffeen, of counsel), for plaintiffs.

Sedgwick, Detert, Moran & Arnold, New York City (Kimberly S. Penner, of counsel), for defendant Liberty Mut. Ins. Co.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiffs Bert Hetchkop, in his fiduciary capacity as director, and the New York City District Council of Carpenters Welfare Fund, Pension Fund, Vacation Fund, Annuity Fund, Apprenticeship, Journeyman Retraining, Educational and Industry Fund and Supplemental Fund (the "Benefit Funds") bring this action to recover on a surety bond issued by Liberty Mutual Insurance Company ("Liberty"). Each party seeks summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and in addition, Liberty seeks a dismissal of the complaint pursuant to 28 U.S.C. § 1367(c). For the reasons that follow, the Benefit Funds' motion for summary judgment is granted.

## BACKGROUND

The Benefit Funds are jointly-administered, multi-employer, labor-management trust funds established and maintained pursuant to various collective bargaining agreements in accordance with the Taft–Hartley Act, 29 U.S.C. § 141 *et seq.* (1988). Complaint ¶ 5. The Benefit Funds are also employee benefit plans within the meaning of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* (1993). *Id.* Gundolt Carpet Workroom, Inc. ("Gundolt") is a member of the Greater New York Floor Coverers Association, Inc., which is the exclusive bargaining agent for all of its members for the purpose of collective bargaining with the United Brotherhood of Carpenters and Joiners of America, AFL–CIO (the "Union"). Affidavit of Daniel A. Donnellan dated 10/19/93 ("Donnellan Aff. of 10/19/93") ¶ 3.

In 1987, the Benefit Funds and Gundolt executed a collective bargaining agreement (the "Agreement") effective July 1, 1987 through June 30, 1990. *Id.* ¶ 3–4. Under the Agreement, Gundolt was bound to make monetary contributions to the Benefit Funds for fringe benefits on behalf of its employees who performed work within the trade and geographical jurisdiction of the Union. *Id.* ¶ 4. The Agreement also mandated that Gundolt post a surety bond, the amount of which was dictated by the number of members in the company's bargaining unit. *Id.* Pursuant to the Agreement, on or about December 2, 1988, Liberty issued Bond No. QL1–1331–432827–058 (the "Bond") in favor of the Benefit Funds which guaranteed up to $50,000 of Gundolt's contributions.[1] Affidavit of Mary Taylor ("Taylor Aff.") ¶ 3. The

---

1. The bond was issued on a form provided by the Benefit Funds. Taylor Aff. ¶ 5. Although any ambiguous term must be construed against the drafter, *see H.S. Equities v. Hartford Accident & Indem. Co.,* 661 F.2d 264, 272 (2d Cir.1981), the Bond is unambiguous, as discussed below.

Bond, which by its terms incorporated the Agreement, was effective from December 2, 1988 through June 30, 1990. *Id.* ¶ 4.

In order to determine if Gundolt had made all required payments, the Benefit Funds commenced an audit of their relevant books and records for the period July 1, 1988 through June 30, 1991. Donnellan Aff. of 10/19/93. ¶ 11. The audit, which continued through July 17, 1991 and required 13 visits to Gundolt's offices, revealed that Gundolt had failed to make $242,933.90 in fringe benefit contributions to the Benefit Funds, of which $112,022.44 was covered by the Bond. *Id.*; Affidavit of Daniel A. Donnellan dated 12/15/93 ("Donnellan Aff. of 12/15/93") ¶ 3. On November 8, 1991, the Benefit Funds notified Gundolt of its deficiency and demanded payment thereof, but payment was not forthcoming. Letter from Perkins to Treter of 11/8/91; Donnellan Aff. of 10/19/93 ¶ 12.

On June 29, 1992, the Benefit Funds brought the instant action against Gundolt, seeking $242,933.90 in damages for their alleged violation of the Agreement, and against Liberty, seeking $50,000 in damages based upon their guarantee relating thereto. Thereafter, Gundolt filed for protection under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 *et seq.* (1988), and on December 11, 1992, the entire action was transferred to the court's suspense docket. By order dated February 1, 1993, the action was restored to the court's trial calendar so that the Benefit Funds could proceed against Liberty. The parties filed cross-motions for summary judgment.

## DISCUSSION

■ Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment may be granted if "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). The moving party must demonstrate the absence of any genuine issue of material fact. *See Adickes v. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). It is well-established that a fact is material when its resolution would "affect the outcome of the suit under the governing law," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also Celotex,* 477 U.S. 317, 322–24, 106 S.Ct. at 2552–53 (1986). Moreover, in a contract dispute, summary judgment may be granted only where the language of the agreement is unambiguous, *see Sayers v. Rochester Tel. Corp.,* 7 F.3d 1091, 1094 (2d Cir.1993), which is a question for the court. *See Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.,* 906 F.2d 884, 889 (2d Cir.1990).

As a preliminary matter, Liberty has objected to the Court's exercise of jurisdiction over this action.[2] In short, Liberty contends that, under the circumstances, the state court is the appropriate forum for this contract claim and that this Court should decline to exercise its supplemental jurisdiction.

■ By codifying the concepts of ancillary and pendent jurisdiction, *see* 28 U.S.C. § 1367(a),[3] Congress conferred broad "supplemental" subject matter jurisdiction upon the federal courts.[4] *See Estate of Bruce v. City of Middletown,* 781 F.Supp. 1013, 1015 (S.D.N.Y.1992). Thus, even where an inde-

---

**2.** In January of 1993, the Benefit Funds requested that the case be restored from the suspense docket to the trial calendar for purposes of proceeding against Liberty. At that time, Liberty did not object.

**3.** Section 1367(a) provides in pertinent part:
Except as provided in subsections (b) and (c) ... the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.... Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.
28 U.S.C. § 1367(a) (1993).

**4.** In support of its argument, Liberty cites *Carpenters Southern Cal. Admin. Corp. v. D & L Camp. Const. Co., Inc.,* 738 F.2d 999 (9th Cir. 1984) and *Giardiello v. Balboa Ins. Co.,* 837 F.2d 1566 (11th Cir.1988). However, these cases were decided prior to the codification of supplemental jurisdiction and are therefore no longer persuasive.

pendent basis for federal jurisdiction is lacking, a court may exercise subject matter jurisdiction over state claims which "are part of the same case or controversy that includes a federal claim." *Id.* Furthermore, in such instances, "the court's exercise of pendent jurisdiction, although not automatic, would be a favored and normal course of action." *Id.* at 1016 (citing *Promisel v. First Amer. Artificial Flowers,* 943 F.2d 251, 254 (2d Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 939, 117 L.Ed.2d 110 (1992)). It follows that, where, as here the claims against Gundolt and Liberty derive from a common nucleus of operative facts, the Court should exercise its supplemental jurisdiction in this case, especially since there are no reasons set forth by Liberty that would justify deferring to the jurisdiction of the state court.[5]

Turning to the merits, it is well-established that the "liability of a surety on a bond is predicated upon a breach of the conditions of the bond which describe the obligation." *State v. Peerless Ins. Co.,* 135 A.D.2d 143, 524 N.Y.S.2d 877, 881 (3d Dept.1988) (citation omitted). The Bond provides that unless Gundolt makes the payments required under the Agreement "for the period during which th[e] bond remains in force ... the [Bond] shall be ... in full force and effect, until June 30, 1990." As noted above, Gundolt failed to make the required payments. In addition, the Bond provides "[t]hat no suit, action or proceeding shall be maintained against the Surety hereunder, unless the same be instituted within two years after the date of expiration or cancellation of this bond." Since this action was instituted prior to June 30, 1990, or within two years from the expiration of the Bond, this condition was also satisfied.

■ Liberty contends however, that pursuant to another provision set forth in the Bond, it unilaterally released itself from all liability to the Benefit Funds. According to Liberty, that provision enabled Liberty to "cancel its liability as to future assessments under th[e] bond at any time by written notice to [Gundolt] and [the Benefit Funds] at least 30 days in advance of the date of cancellation." Accordingly, Liberty argues that its cancellation request, dated October 8, 1991, eliminated all liability to the Benefit Funds, once this request was sent, unless the Benefit Funds asserted their claims within that thirty day period. This argument is in turn predicated on interpretation of the word "assessments" to mean the assertion of any claim against the bond regardless of the time when the facts giving rise to such claims occurred.

That argument must be rejected for several reasons. First, that construction is belied by Liberty's own language set forth in the letter which it now claims released it from any liability under the bond, wherein Liberty stated in pertinent part:

> We hereby *request* you to release Liberty Mutual Insurance Company, as Surety, from further liability under the captioned bond. We have enclosed a mail back copy of this *request* along with a self addressed envelope. Please respond below and return a copy of this form to the attention of the writer. If we do not hear from you we will assume that we are released from liability 30 days from the date of this letter.

Letter from Taylor to Benefit Funds of 10/8/91 (emphasis added).[6]

■ Moreover, "insurance contracts are treated like other business contracts," *Broadway Nat'l Bank v. Progressive Cas. Ins. Co.,* 775 F.Supp. 123, 127 (S.D.N.Y.1991), *aff'd,* 963 F.2d 1522 (2d Cir.1992), and must

---

**5.** Under section 1367, there is no supplemental jurisdiction where the state claim "substantially predominates" over the federal claim underlying the district court's original jurisdiction, or under other exceptional circumstances, where "compelling reasons" exist for declining jurisdiction. 28 U.S.C. § 1367(c) (1993). None of these factors are present here.

**6.** This letter evinces Liberty's own recognition of the distinction between cancelling its liability as to future assessments and releasing itself from liability from all claims, even those that the employers had failed to pay prior to the sending of the notice of cancellation. The former could be done unilaterally on notice, whereas the latter required the written acquiescence of the Benefit Funds. Indeed, when seeking to cancel liability for future benefit payments Liberty did not use the word "request." See, *e.g.,* Letter from Avellino to Benefit Funds of 7/29/92.

be construed according to "what a businessman would reasonably expect to give or receive, to perform or suffer, under its terms." *Shirai v. Blum*, 239 N.Y. 172, 179, 146 N.E. 194 (1924). Thus, this Court must interpret the Bond in the light of all "the surrounding circumstances and the apparent purpose which the parties sought to accomplish." *Cable Science Corp. v. Rochdale Village, Inc.*, 920 F.2d 147, 151 (2d Cir.1990) (citation omitted).

By improperly equating the term "assessment" with demand for payment, Liberty ignores the reality of Gundolt's obligations and of the audit process by which the Benefit Funds must monitor compliance with the Agreement. Pursuant to the terms of the Agreement, the Benefit Funds, in an effort to ensure that all payments are made, are entitled to audit the employer's books and records. Donnellan Aff. of 10/19/93 ¶ 8. This audit provides a critical mechanism by which the Benefit Funds can determine whether an employer, such as Gundolt, has made all required contributions. *Id.*

Upon the commencement of an audit, an appointment is made to visit the company, its accountants, or any designated representative depending on where the company's books and records are located. *Id.* ¶ 9. Once all of these books and records have been reviewed, the results are analyzed, and if necessary, further records are sought. *Id.* ¶ 10. The entire process requires the cooperation of the employer, and often its accountants or designated representatives. *Id.*

In short, the audit process described above is, of necessity, likely to be both time consuming and costly. *Id.* ¶ 8–10. The Court concludes therefore that no rational interpretation of the obligations assumed by the parties here would be consistent with Liberty's unilateral right to terminate all responsibility for claims, regardless of when they accrued. Indeed, if the Court adopted Liberty's interpretation, Liberty could avoid responsibility under the Bond by the simple expedient of sending a cancellation notice upon the initiation of an audit, a result which would negate the underlying purpose of the surety contract.

Furthermore, if the Court were to adopt Liberty's interpretation of the cancellation clause, the provision requiring the Benefit Funds to bring suit within two years would be rendered superfluous. *See Sayers*, 7 F.3d at 1095; *Rothenberg v. Lincoln Farm Camp, Inc.*, 755 F.2d 1017, 1019 (2d Cir.1985). Thus, the only reasonable reading of the Bond's language is that during the term of the Bond, Liberty could elect to terminate its liability only as to claims accruing after the cancellation date. By way of example, if Liberty had elected to cancel its liability effective September 1, 1989, it would have eliminated liability for any assessments accruing thereafter. Nevertheless, Liberty would have remained liable for payments that Gundolt had failed to make during the effective period of the Bond prior to cancellation. *See American Home Prods. Corp. v. Liberty Mutual Ins. Co.*, 748 F.2d 760, 764–66 (2d Cir.1984); *Peerless Ins. Co.*, 135 A.D.2d 143, 524 N.Y.S.2d at 880–81; *Lee v. Eastern Freightways, Inc.*, 76 A.D.2d 133, 431 N.Y.S.2d 204, 205 (3d Dep't 1980); *see also Seiden Assoc., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir.1992); *Metropolitan Life*, 906 F.2d at 889. The Court concludes therefore that, because Liberty's cancellation request did not constitute a unilateral release of all liability, it remains liable on the Bond.[7]

Accordingly, plaintiffs' motion for summary judgment shall be and hereby is granted. The Clerk of the Court is directed to enter appropriate judgment for plaintiffs and close the above-captioned action.

It is **SO ORDERED.**

---

7. In any event, Liberty's cancellation request could not have effected a mutual release. *See Metz v. Metz*, 175 A.D.2d 938, 572 N.Y.S.2d 813, 815 (3d Dep't 1991). Where a release is not supported by consideration, it must be signed by the renouncing party in order to be valid. *See*

*Pratt Plumbing & Heating, Inc. v. Mastropole*, 68 A.D.2d 973, 414 N.Y.S.2d 783, 785 (3d Dep't 1979). The purported release in this case was not signed by the Benefit Funds, if it was ever even received by them. Taylor Aff. ¶ 9–11; Donnellan Aff. of 10/19/93 ¶ 14.