68 F.3d 561
 150 L.R.R.M. (BNA) 2518, 19 Employee Benefits
Cas. 2245,
Pens. Plan Guide P 23915A
 William GREENBLATT, as Chairman and Trustee of the Joint
Industry Board of the Plumbing Industry of the City of New
York and Funds Administered by Joint Industry Board of the
Plumbing Industry of the City of New York; Peter N.
Salzarulo, Co-Chairman and Trustee of the Joint Industry
Board of the Plumbing Industry of the City of New York and
Funds Administered by Joint Industry Board of the Plumbing
Industry of the City of New York; and in his capacity as
President of Local Union No. 2 of the United Association of
Journeymen and Apprentices of the Plumbing and Pipe Fitting
Industry of the United States and Canada, AFL-CIO; and
Individually; Local Union No. 2 of the United Association
of Journeymen and Apprentices of the Plumbing and Pipe
Fitting Industry of the United States and Canada, AFL-CIO,
Plaintiffs-Appellees-Cross-Appellants,
v.
DELTA PLUMBING & HEATING CORP., Defendant,
and
New York Surety Co., Defendant-Appellant-Cross-Appellee.
 Nos. 1079, 1215, Dockets 94-7826, 94-7866.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 18, 1995.
Decided Oct. 13, 1995.
 
 Joseph S. Kaming, Kaming & Kaming, New York City (Elizabeth C. Kaming and Sean O'Donnell, of counsel) for Plaintiffs-Appellees-Cross-Appellants.
 Michael R. Strauss, Hollander & Associates, New York City (Lewis S. Calderon, of counsel) for Defendant-Appellant-Cross-Appellee New York Surety.
 Before: WALKER, JACOBS, and CALABRESI, Circuit Judges.
 WALKER, Circuit Judge:
 
 
 1
 Defendant New York Surety appeals from a judgment, following a bench trial, of the United States District Court for the Southern District of New York (Robert W. Sweet, District Judge ) awarding $50,638.86 plus interest and costs to plaintiffs. Greenblatt v. Delta Plumbing & Heating Corp., 849 F.Supp. 247, 251 (S.D.N.Y.1994); Greenblatt v. Delta Plumbing & Heating Corp., 834 F.Supp. 86, 93 (S.D.N.Y.1993). Because we hold that the district court lacked subject matter jurisdiction, we reverse the decision in which the district court ruled that it had such jurisdiction, Greenblatt v. Delta Plumbing & Heating Corp., 818 F.Supp. 623, 631 (S.D.N.Y.1993), vacate all other orders in the case, and dismiss the complaint.BACKGROUND
 
 
 2
 Plaintiffs (collectively the "Plumbing Industry Board" or "Board") are guardians of employee benefit funds administered pursuant to a collective bargaining agreement between the Association of Contracting Plumbers of the City of New York, Inc. and Local Union Number 2 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada (the "Union"). On November 21, 1989, the Board filed a complaint against Delta Plumbing & Heating Corporation ("Delta"), one of the signatories to the collective bargaining agreement. The complaint alleged, among other claims, that Delta had failed to make timely fringe benefits payments to the Board in fulfillment of Delta's obligation under the agreement.
 
 
 3
 Under the collective bargaining agreement, Delta was obligated to furnish a surety bond in favor of the Board to guarantee Delta's obligation to make benefits payments. On January 29, 1990, the New York Surety Company ("New York Surety") issued such a bond on behalf of Delta. On May 9, 1990, the Board amended its complaint to name New York Surety as a defendant, alleging that it was entitled to recover on the bond because of Delta's default.
 
 
 4
 In March, 1991, Delta filed for bankruptcy, automatically staying actions against it pursuant to 11 U.S.C. Sec. 362 and leaving New York Surety as the sole defendant in this action. Greenblatt, 818 F.Supp. at 624. New York Surety moved under Federal Rule of Civil Procedure 12(b)(1) to dismiss the complaint on the ground that the district court lacked subject matter jurisdiction. The district court denied the motion. Id. at 631. After a trial, the district court awarded the Board judgment on the bond. Greenblatt, 834 F.Supp. at 93.
 
 DISCUSSION
 
 5
 New York Surety raises a number of claims of error on appeal, and the Board cross-appeals from the district court's denial of costs, liquidated damages, and attorneys' fees under Sec. 502(g)(2) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Sec. 1132(g)(2).[1] We address only New York Surety's contention that the district court lacked subject matter jurisdiction. Specifically, we consider whether the district court had jurisdiction by virtue of (1) Sec. 515 of ERISA, 29 U.S.C. Sec. 1145; (2) the presence of a federal question in the state law cause of action; (3) pre-emption of state law (a) by Sec. 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. Sec. 185, or (b) by Sec. 514(a) of ERISA, 29 U.S.C. Sec. 1144(a); or (4) the doctrine of pendent party jurisdiction. We hold that none of these bases provided subject matter jurisdiction over the Board's claim on the bond against New York Surety.
 
 I. Jurisdiction under Section 515
 
 6
 The district court held that "subject matter jurisdiction is granted to this court by Section 515 of ERISA (29 U.S.C. Sec. 1145)." Greenblatt, 818 F.Supp. at 625. Section 515 provides:
 
 
 7
 Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.
 
 
 8
 29 U.S.C. Sec. 1145.
 
 
 9
 In addressing the applicability of Sec. 515 to this action, the district court held that New York Surety fell within the definition of "employer" in Sec. 3 of ERISA as "any person acting ... indirectly in the interest of an employer[ ] in relation to an employee benefit plan," 29 U.S.C. Sec. 1002(5). Greenblatt, 818 F.Supp. at 627. The district court reasoned that
 
 
 10
 Delta bonded its pension obligations because the Agreement required it to take out a surety bond "to the benefit of the Joint Plumbing Industry Board." New York Surety thereby became a person acting indirectly in the interest of the employer since without the bond there would have been no agreement between Delta and Local Union No. 2.
 
 
 11
 Id. at 629. In the district court's view, the common benefit conferred by the surety arrangement on the employees and Delta did not alter the fact that New York Surety was acting indirectly in Delta's interest and thus was an ERISA employer. Id.
 
 
 12
 Because New York Surety was an employer under Sec. 3 of ERISA, the district court reasoned, it was subject to the strictures of Sec. 515. The district court held that it was "permissible" to construe Sec. 515 to cover a party acting in the interests of an employer if that party "promised to make contributions according to the 'terms' of the collective bargaining agreement," even if it was not a signatory to the agreement and did not assume all of an employer's contribution obligations. Id. at 628. Since this "permissible" construction did not conflict with Congress's broader purpose in enacting and amending Sec. 515, which was to "allow[ ] prompt and effective collection of unpaid benefits," id. at 627, the district court held that New York Surety was within the compass of Sec. 515. Id. at 628.
 
 
 13
 Even if we were to assume that Sec. 515 did apply to New York Surety (a proposition we reject later in this opinion), that fact alone would not confer subject matter jurisdiction. Section 515 does not by itself confer jurisdiction; it is simply a substantive requirement that an employer make contributions to a multiemployer ERISA plan as specified in the plan or collective bargaining agreement. See 29 U.S.C. Sec. 1145. Federal jurisdiction over ERISA is created by Sec. 502(f), 29 U.S.C. Sec. 1132(f). That section provides that federal district courts shall have jurisdiction of civil actions under Sec. 502(a), 29 U.S.C. Sec. 1132(a), to enforce the provisions of the statute dealing with protection of employee benefit rights, 29 U.S.C. Secs. 1001-1169. Id. Section 502(f) is absent from the district court's discussion of its jurisdiction.
 
 
 14
 "It is long settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). " '[A] right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.' " Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 10-11, 103 S.Ct. 2841, 2847, 77 L.Ed.2d 420 (1983) (quoting Gully v. First Nat'l Bank, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936)). Under the well-pleaded complaint rule, Sec. 515 would provide jurisdiction only if the Board, as a fiduciary, brought a claim against New York Surety under Sec. 502(a)(3), 29 U.S.C. Sec. 1132(a)(3), to enforce the employer's obligations to make contributions under the terms of the ERISA plan or the collective bargaining agreement.
 
 
 15
 In this case, while the Board expressly pleaded such claims against Delta in the amended complaint (which were later severed from this action), it did not raise a claim under Sec. 502(a) for a violation of Sec. 515 against New York Surety. In fact, its claim against New York Surety did not mention Sec. 515 at all, nor did the Board seek leave to amend the complaint. The Board's only claim against New York Surety was an action on the bond, which, although not denominated specifically in the complaint as such, is purely a state law claim. Cf. Socony-Vacuum Oil Co. v. Continental Casualty Co., 219 F.2d 645, 647 (2d Cir.1955).
 
 
 16
 Indeed, the district court did not treat the Board's claim as one under federal law. See Greenblatt, 834 F.Supp. at 92. Although the district court noted that New York Surety was subject to the strictures of Sec. 515, 818 F.Supp. at 627-28, it never recognized a Sec. 515 claim as pleaded in the amended complaint and never adjudicated such a claim. Rather, it resolved the claim by applying New York law. As best as we can discern, the district court's apparent theory of jurisdiction is that New York Surety is an employer obliged to make contributions under Sec. 515, and that because of its obligation, jurisdiction exists over any state law claim related to those obligations. This theory does not meet the strictures of the well-pleaded complaint rule.
 
 
 17
 We have the discretionary power under certain circumstances to amend a complaint constructively to recognize unpleaded claims. If we were to amend the complaint constructively to state two claims against New York Surety--a Sec. 515 claim and a state claim on the bond--we might recognize the district court as having pendent jurisdiction over the state law claim if we did not deem the federal claim insubstantial or frivolous. See Nolan v. Meyer, 520 F.2d 1276, 1280 (2d Cir.), cert. denied, 423 U.S. 1034, 96 S.Ct. 567, 46 L.Ed.2d 408 (1975). However, for the reasons that follow, this case is not one in which constructive amendment would be appropriate.
 
 
 18
 As a general rule, we "will permit amendments only when the effect will be to acknowledge that certain issues upon which the lower court's decision has been based or issues consistent with the trial court's judgment have been litigated." 6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure Sec. 1494, at 56 (2d ed. 1990), cited with approval in Wahlstrom v. Kawasaki Heavy Indus., Ltd., 4 F.3d 1084, 1087 (2d Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 1060, 127 L.Ed.2d 380 (1994). In Wahlstrom, the plaintiffs did not request relief for the wrongful death of their son under federal maritime law; their complaint stated claims only under state tort law. The plaintiffs also did not seek leave to file an amended complaint. The defendant, however, raised the applicability of federal maritime law as an affirmative defense, and in opposition to the motion for summary judgment the plaintiffs argued that they had the right to recover under federal law. Id. at 1086. Since the magistrate judge "extensively discussed" the issue of the applicability of federal law in his recommended ruling, we deemed the plaintiffs' complaint to be amended constructively so as to include a claim for relief for wrongful death damages under federal maritime law. Id. at 1087.
 
 
 19
 Here, the district court neither considered distinct federal and state causes of action nor discussed the theory of pendent jurisdiction, which might have provided jurisdiction for the state claim. Since, as discussed below, we do not believe that the Board could state a Sec. 515 claim against New York Surety, we decline to constructively amend the complaint to vindicate a theory of jurisdiction the district court never addressed. Cf. Greene v. Town of Blooming Grove, 935 F.2d 507, 512 (2d Cir.), cert. denied, 502 U.S. 1005, 502 U.S. 1005, 116 L.Ed.2d 657 (1991) (declining to amend a complaint constructively in circumstances more compelling than those present here). Thus, the amended complaint as it stands provides no basis for jurisdiction under Secs. 515 and 502(f) of ERISA.
 
 
 20
 II. Federal Question Jurisdiction Under 28 U.S.C. Sec. 1331
 
 
 21
 The fact that the Board's amended complaint does not directly state a cause of action created by federal law does not necessarily mean that its well-pleaded complaint fails to present a federal question. The Supreme Court has recently explained the scope of federal question jurisdiction under 28 U.S.C. Sec. 1331[2]:
 
 
 22
 The most familiar definition of the statutory "arising under" limitation is Justice Holmes' statement, "A suit arises under the law that creates the cause of action." American Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916). However, it is well settled that Justice Holmes' test is more useful for describing the vast majority of cases that come within the district courts' original jurisdiction than it is for describing which cases are beyond district court jurisdiction. We have often held that a case "arose under" federal law where the vindication of a right under state law necessarily turned on some construction of federal law, see, e.g., Smith v. Kansas City Title & Trust Co., 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921); Hopkins v. Walker, 244 U.S. 486, 37 S.Ct. 711, 61 L.Ed. 1270 (1917).... Leading commentators have suggested that for purposes of Sec. 1331 an action "arises under" federal law "if in order for the plaintiff to secure the relief sought he will be obliged to establish both the correctness and the applicability to his case of a proposition of federal law." P. Bator, P. Mishkin, D. Shapiro, & H. Wechsler, Hart & Wechsler's The Federal Courts and the Federal System 889 (2d ed. 1973) ...; cf. T.B. Harms Co. [v. Eliscu, 339 F.2d 823, 827 (2d Cir.1964) (Friendly, J.) ] ("a case may 'arise under' a law of the United States if the complaint discloses a need for determining the meaning or application of such a law").
 
 
 23
 Franchise Tax Bd., 463 U.S. at 8-9, 103 S.Ct. at 2845-46 (some citations omitted).
 
 
 24
 The well-pleaded complaint rule emerged to preclude federal jurisdiction when a federal question was asserted or anticipated as a defense, but it did not limit jurisdiction when a federal question was presented as an essential element of a state law claim. See id. at 10-11, 103 S.Ct. at 2846-47. Accordingly,
 
 
 25
 [e]ven though state law creates appellant's cause[ ] of action, its case might still "arise under" the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties.
 
 
 26
 Id. at 13, 103 S.Ct. at 2848; see also Smith, 255 U.S. at 201-02, 41 S.Ct. at 245-46 (finding jurisdiction when a shareholder-plaintiff sought an injunction to prevent a trust company from buying farm loan bonds issued pursuant to a federal statute since his bill for relief was predicated on the assertion that the federal statute was unconstitutional).
 
 
 27
 The Supreme Court has since cautioned, however, that "Franchise Tax Board ... did not purport to disturb the long-settled understanding that the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804, 813, 106 S.Ct. 3229, 3234, 92 L.Ed.2d 650 (1986). Rather, in determining federal question jurisdiction, courts must make "principled, pragmatic distinctions," engaging in " ' "a selective process which picks the substantial causes out of the web and lays the other ones aside." ' " Id. at 813-14, 106 S.Ct. at 3235 (quoting Franchise Tax Bd., 463 U.S. at 20-21, 103 S.Ct. at 2851-52 (quoting Gully, 299 U.S. at 118, 57 S.Ct. at 100)). The Court then concluded that, where Congress did not create a private right of action for violation of a federal statute, "the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction." Id. at 814, 106 S.Ct. at 3235.
 
 
 28
 Thus, no bright-line test governs our inquiry; "[e]xamining only those allegations which are properly raised in a well-pleaded complaint," we look to the nature of the federal question raised in the claim to see if it is sufficiently substantial to warrant federal jurisdiction. West 14th St. Commercial Corp. v. 5 W. 14th Owners Corp., 815 F.2d 188, 192-93 (2d Cir.), cert. denied, 484 U.S. 850, 871, 108 S.Ct. 151, 200, 98 L.Ed.2d 107, 151 (1987); compare id. at 195-96 (finding a substantial federal question under a federal housing statute after construing the claim to state a statutory or common law action to remove a cloud on title) with Travelers Indem. Co. v. Sarkisian, 794 F.2d 754, 762 (2d Cir.) (finding that a claim based on a New York statute making foreign judgments enforceable only to the extent required by the Full Faith and Credit Clause did not raise a substantial federal question), cert. denied, 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 253 (1986).
 
 
 29
 Here, the Board's state law claim on the surety bond does not present a substantial federal question. It is true that the Board had to prove as an element of its claim on the bond that Delta had defaulted on its obligations under the collective bargaining agreement. But the nature and extent of Delta's obligations and whether default occurred are resolved by construing the collective bargaining agreement, not federal law. While the agreement "is a federal contract and is therefore governed and enforceable by federal law, in the federal courts," International Ass'n of Machinists v. Central Airlines, Inc., 372 U.S. 682, 692, 83 S.Ct. 956, 962, 10 L.Ed.2d 67 (1963), the agreement itself is not federal law. Thus, the fact that an element of the cause of action requires construction of the agreement does not present a federal question. The most that can be said of an action on a surety bond guaranteeing a signatory's obligations under a collective bargaining agreement is that in some circumstances a federal question might arise. We believe that to be too thin a reed to support federal jurisdiction.
 
 
 30
 Indeed, in this case, the district court encountered no substantial federal question in resolving the Board's claim on the merits. Here, there was no real dispute over Delta's liabilities under the collective bargaining agreement, and certainly none that required resort to the federal common law. In fact, the only invocation of federal law in the district court's discussion of the merits of the Board's claim (as opposed to New York Surety's defenses) is the conclusion that repudiation of pension promises is disfavored. See Greenblatt, 834 F.Supp. at 91 (citing Benson v. Brower's Moving & Storage, Inc., 907 F.2d 310, 314 (2d Cir.), cert. denied, 498 U.S. 982, 111 S.Ct. 511, 112 L.Ed.2d 524 (1990)).
 
 
 31
 With respect to federal question jurisdiction, it is also of no moment that federal law provides a cause of action to the Board against Delta for violation of the collective bargaining agreement, 29 U.S.C. Sec. 185(a), or for default on its ERISA plan obligations created thereunder, 29 U.S.C. Secs. 1132(a), 1145. While those provisions are "substantive" in the sense that they provide for a cause of action under federal law, cf. Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 450-52, 456-57, 77 S.Ct. 912, 914-15, 917-18, 1 L.Ed.2d 972 (1957) (finding that Sec. 301(a) not only confers federal jurisdiction but is also a source of federal substantive law); Shirley-Herman Co. v. International Hod Carriers, 182 F.2d 806, 808-09 (2d Cir.1950) (same), they are not the source of the rights or duties sought to be enforced against New York Surety, cf. Great Am. Fed. Sav. & Loan Ass'n v. Novotny, 442 U.S. 366, 372, 99 S.Ct. 2345, 2349, 60 L.Ed.2d 957 (1979) (distinguishing between the remedy of 42 U.S.C. Sec. 1985(3) and substantive rights actionable thereunder).
 
 
 32
 This case is therefore distinguishable from American Surety Co. v. Schultz, 237 U.S. 159, 35 S.Ct. 525, 59 L.Ed. 892 (1915). There, in order to take the case to the circuit court of appeals, the defendant gave a supersedeas surety bond as security. Id. at 159-60, 35 S.Ct. at 525-26. The Supreme Court held that there was federal question jurisdiction in the action on the bond because a federal statute expressly gave the plaintiff a right of action on the bond, and "in the suit to enforce that right the measure of his recovery depended upon the construction to be given the Federal statute." Id. at 160, 35 S.Ct. at 525. Here, the bond is not required by federal law and no construction of a federal statute is at issue. Thus no substantial federal question is implicated that would give rise to jurisdiction under 28 U.S.C. Sec. 1331.
 
 III. Pre-emption
 
 33
 The Board argues that an alternative basis for jurisdiction is that its state law claim on the bond is preempted by Sec. 514 of ERISA and Sec. 301 of LMRA. Although somewhat counterintuitive, the pre-emptive force of those two statutory provisions can create federal jurisdiction. As the Supreme Court has explained,
 
 
 34
 [f]ederal pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint.... One corollary of the well-pleaded complaint rule developed in the case law, however, is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character. For 20 years, this Court has singled out claims pre-empted by Sec. 301 of the LMRA for such special treatment. Avco Corp. v. Machinists, 390 U.S. 557 [88 S.Ct. 1235, 20 L.Ed.2d 126] (1968). "The necessary ground of decision [in Avco ] was that the pre-emptive force of Sec. 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.' Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of Sec. 301."Taylor, 481 U.S. at 63-64, 107 S.Ct. at 1546-47 (quoting Franchise Tax Bd., 463 U.S. at 23, 103 S.Ct. at 2853-54 (footnote omitted)). In Taylor, the Supreme Court found that Sec. 514(a) of ERISA also had expansive pre-emptive effect similar to that of Sec. 301 of LMRA, id., 481 U.S. at 62-63, 107 S.Ct. at 1545-46, and that federal jurisdiction would arise if the pre-empted claim came within the scope of the enforcement provisions of Sec. 502(a) of ERISA, id. at 64-66, 107 S.Ct. at 1546-47. We thus examine whether either Sec. 301 of LMRA or Sec. 514(a) of ERISA pre-empted the Board's state law claim.
 
 A. Section 301 of LMRA
 
 35
 Section 301 of LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ..., or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. Sec. 185(a).
 
 
 36
 The Supreme Court has defined the pre-emptive force of Sec. 301 broadly: "if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor-law principles--necessarily uniform throughout the Nation--must be employed to resolve the dispute." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405-06, 108 S.Ct. 1877, 1881, 100 L.Ed.2d 410 (1988). The Board takes heart in the breadth of this rule, and contends that since resolution of its surety claim requires inquiry into Delta's obligations under the collective bargaining agreement, New York surety law is pre-empted and its claim is therefore necessarily a federal one under Sec. 301.
 
 
 37
 But the Board is too quick in assuming that pre-emption necessarily leads to federal jurisdiction. "[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a Sec. 301 claim or dismissed as pre-empted by federal labor-contract law." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220, 105 S.Ct. 1904, 1916, 85 L.Ed.2d 206 (1985) (citation omitted and emphasis added). In Allis-Chalmers, the plaintiff sued under Wisconsin tort law for bad-faith handling of an insurance claim. Finding that the state remedy "exists for breach of a duty devolved upon the insurer by reasonable implication from the express terms of the contract," id. at 216, 105 S.Ct. at 1914 (quotations omitted), the Court held that the plaintiff's claim "should have been dismissed for failure to make use of the grievance procedure established in the collective-bargaining agreement or dismissed as pre-empted by Sec. 301," id. at 220-21, 105 S.Ct. at 1916 (citation omitted).
 
 
 38
 As Allis-Chalmers makes clear, in order for federal jurisdiction to arise, the claim must be one that is capable of being brought under Sec. 301. "[A] suit properly brought under Sec. 301 must be a suit either for violation of a contract between an employer and a labor organization representing employees in an industry affecting commerce or for violation of a contract between such labor organizations." Wooddell v. International Bhd. of Elec. Workers, Local 71, 502 U.S. 93, 98, 112 S.Ct. 494, 498, 116 L.Ed.2d 419 (1991). While we have found Sec. 301 jurisdiction in a suit brought against defendants who are not themselves signatories to the contract but were instead the signatory's trustees, see Whelan v. Colgan, 602 F.2d 1060, 1062 (2d Cir.1979), it is clear that at a minimum the defendant must have breached some duty created by a labor contract to be liable for a violation. New York Surety had no duty arising under the collective bargaining agreement or any other labor contract; the collective bargaining agreement did nothing more than require each of the contractor signatories to secure a bond. New York Surety's duty to pay upon the bond was the creature of that instrument alone, and thus the district court had no jurisdiction under Sec. 301 to hear this claim.
 
 
 39
 Not only does Sec. 301 not provide a cause of action on the bond, it also does not pre-empt state surety law. "[N]ot every dispute ... tangentially involving a provision of a collective-bargaining agreement[ ] is pre-empted by Sec. 301...." Allis-Chalmers, 471 U.S. at 211, 105 S.Ct. at 1911. The Supreme Court has declined to draw a bright-line rule as to what constitutes "sufficient" dependence on the interpretation of labor contracts for the purposes of Sec. 301 pre-emption, preferring case-by-case resolution. See id. at 220, 105 S.Ct. at 1915-16. The Court has generally found pre-emption of state law rules of contract interpretation, see Local 174, Teamsters v. Lucas Flour Co., 369 U.S. 95, 103-04, 82 S.Ct. 571, 576-77, 7 L.Ed.2d 593 (1962), and of state law remedies that provide relief for breach of a duty created by a labor contract, see Allis-Chalmers, 471 U.S. at 216, 105 S.Ct. at 1913-14; Republic Steel Corp. v. Maddox, 379 U.S. 650, 658 n. 15, 85 S.Ct. 614, 619 n. 15, 13 L.Ed.2d 580 (1965) (pre-emption of state contract claim for severance pay owed under collective bargaining agreement). However, New York surety law does not affect the interpretation of a labor contract or provide relief against a defendant who breaches a duty created by that contract. It fits squarely within the exception from pre-emption that the Court set forth in Lingle:
 
 
 40
 [A]s a general proposition, a state-law claim may depend for its resolution upon both the interpretation of a collective-bargaining agreement and a separate state-law analysis that does not turn on the agreement. In such a case, federal law would govern the interpretation of the agreement, but the separate state-law analysis would not be thereby pre-empted. 486 U.S. at 413 n. 12, 108 S.Ct. at 1885 n. 12. Thus, Sec. 301 does not provide jurisdiction over the Board's claim on the bond.
 
 B. Section 514(a) of ERISA
 
 41
 Unlike Sec. 301 of LMRA, which pre-empts state law by implication, Sec. 514(a) of ERISA contains a specific pre-emption provision:
 
 
 42
 Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.
 
 
 43
 29 U.S.C. Sec. 1144(a). Subsection (b) of Sec. 514 exempts from pre-emption "any law of any State which regulates insurance, banking, or securities," id. Sec. 1144(b)(2)(A), as well as any generally applicable state criminal law, id. Sec. 1144(b)(4).
 
 
 44
 Thus, in order for the district court to have jurisdiction by virtue of ERISA pre-emption, we must find that 1) ERISA pre-empts the state law cause of action because it (a) "relates to" an employee benefit plan and (b) is not exempted by the saving clause excluding state insurance, banking, securities, and generally applicable criminal laws from pre-emption, 29 U.S.C. Sec. 1144(b)(2)(A) & (b)(4), and 2) if it is pre-empted, the claim is within the civil enforcement provisions of ERISA, 29 U.S.C. Sec. 1132(a). See Franklin H. Williams Ins. Trust v. Travelers Ins. Co., 50 F.3d 144, 148-49 (2d Cir.1995).
 
 
 45
 The Supreme Court has characterized the "relate to" language of Sec. 514(a) as "conspicuous for its breadth." FMC Corp. v. Holliday, 498 U.S. 52, 58, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990). "Under Sec. 514(a), ERISA pre-empts any state law that refers to or has a connection with covered benefit plans (and that does not fall within a Sec. 514(b) exception) even if the law is not specifically designed to affect such plans, or the effect is only indirect, and even if the law is consistent with ERISA's substantive requirements." District of Columbia v. Greater Washington Bd. of Trade, 506 U.S. 125, ----, 113 S.Ct. 580, 583, 121 L.Ed.2d 513 (1992) (quotations and citations omitted).
 
 
 46
 Nonetheless, Sec. 514(a) is not without some limitation.
 
 
 47
 If "relate to" were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for "[r]eally, universally, relations stop nowhere," H. James, Roderick Hudson xli (New York ed., World's Classics 1980). But that, of course, would be to read Congress's words of limitation as mere sham, and to read the presumption against pre-emption out of the law whenever Congress speaks to the matter with generality....
 
 
 48
 ... We simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive.
 
 
 49
 New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., --- U.S. ----, ----, 115 S.Ct. 1671, 1677, 131 L.Ed.2d 695 (1995).
 
 
 50
 In determining whether a state law is pre-empted, we look first to see whether that law makes explicit reference to ERISA plans. Id. If it does not, we inquire whether pre-emption would serve the basic purpose of Sec. 514(a): namely, "to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." Id. at ----, 115 S.Ct. at 1677-78. Pre-emption may be proper, for example, when state laws "mandate[ ] employee benefit structures or their administration" or "provid[e] alternate enforcement mechanisms" to Sec. 502(a). Id. at ----, 115 S.Ct. at 1678.
 
 
 51
 In Blue Cross, commercial insurers claimed that ERISA pre-empted the portion of a state statute that imposed surcharges on hospital bills of patients whose commercial insurance coverage was purchased by employee health-care plans that ERISA governed and imposed surcharges on HMOs insofar as their membership fees were paid by an ERISA plan. Id. at ----, 115 S.Ct. at 1673-74. The Supreme Court disagreed, finding that the statute did "not bind plan administrators to any particular choice and thus function as a regulation of an ERISA plan itself," nor did "the indirect influence of the surcharges preclude uniform administrative practice or the provision of a uniform interstate benefit package." Id. at ----, 115 S.Ct. at 1679. The Court determined that "laws with only an indirect economic effect on the relative costs of various health insurance packages in a given State are a far cry from those 'conflicting directives' from which Congress meant to insulate ERISA plans." It thus concluded that the surcharge laws lacked "the requisite 'connection with' ERISA plans to trigger pre-emption." Id. at ----, 115 S.Ct. at 1680.
 
 
 52
 Similarly, in Mackey v. Lanier Collection Agency & Serv., 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), the Court held that ERISA pre-emption did not bar application of a general state garnishment statute to participants' benefits under an ERISA plan, even though garnishment imposed administrative costs and burdens upon benefit plans. Id. at 831, 108 S.Ct. at 2186. Significantly, the Court concluded that "Congress did not intend to forbid the use of state-law mechanisms of executing judgments against ERISA welfare benefit plans, even when those mechanisms prevent plan participants from receiving their benefits." Id. at 831-832, 108 S.Ct. at 2186-87.
 
 
 53
 Here, state surety law makes no explicit reference to ERISA plans and does not bind the hands of ERISA trustees or regulate them in any fashion. Nor does the application of state surety law to bonds ensuring ERISA obligations threaten a "multiplicity of regulation" that would interfere with "the nationally uniform administration of employee benefit plans." Blue Cross, --- U.S. at ---- - ----, 115 S.Ct. at 1677-78. At most, some provision of state surety law might affect the collectibility of funds owed to a plan. A law having only such an indirect effect on plan assets is exactly the kind that Blue Cross and Mackey save from the pre-emptive sweep of Sec. 514(a). A claim on a surety bond is but a "run-of-the-mill state law claim[ ]," similar to tort or non-plan-related contract actions to which ERISA plans may be a party. Mackey, 486 U.S. at 833, 108 S.Ct. at 2187. "[A]lthough obviously affecting and involving ERISA plans," surety bond claims are not pre-empted by Sec. 514(a). Id.
 
 
 54
 A claim on the bond also does not conflict with any enforcement mechanism specified in ERISA, and therefore does not warrant pre-emption under Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990).[3] In Ingersoll-Rand, the Supreme Court found that ERISA pre-empted a Texas state law cause of action for wrongful discharge based on the employer's desire to avoid contributing to or paying benefits under the employee's pension fund. 498 U.S. at 137-38, 111 S.Ct. at 481-82. However, the Supreme Court emphasized that the judge-made cause of action under Texas law, which the Texas Supreme Court carved out as an exception to the employment-at-will doctrine in order to promote the public policy interest in protecting pension entitlements, id. at 136, 111 S.Ct. at 481, "makes specific reference to, and indeed is premised on, the existence of a pension plan." Id. at 140, 111 S.Ct. at 483. The existence of a plan and the employer's pension-defeating motive were elements of the cause of action, and thus the cause of action indisputably "relate[d] to" an ERISA plan. Id. Moreover, the Court found that pre-emption would be mandated because the state statute conflicted directly with an ERISA cause of action against any interference with the rights of plan participants. Id. at 142-45, 111 S.Ct. at 484-86.
 
 
 55
 Unlike the cause of action at issue in Ingersoll-Rand, surety law does not touch upon any rights or duties incident to the ERISA plan itself, nor does it conflict with any ERISA cause of action. Although the Board does not address areas of potential conflict in any of its briefs, the likeliest candidate for conflict is an action under Sec. 502(a)(3) to enforce Sec. 515 of ERISA. This potential conflict returns us to the district court's original theory of jurisdiction: namely, that New York Surety is an "employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement," 29 U.S.C. Sec. 1145.
 
 
 56
 The definition of "employer" in Sec. 3 of ERISA includes anyone "acting ... indirectly in the interest of an employer[ ] in relation to an employee benefit plan." 29 U.S.C. Sec. 1002(5). It is clear that the "in the interest of" language encompasses those who act for an employer or directly assume the employer's duty to make plan contributions. See Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo, 35 F.3d 29, 36-37 (2d Cir.1994) (holding that the president of a corporation who under a collective bargaining agreement had assumed a personal obligation to make pension contributions was an employer liable under Sec. 515); Simas v. Quaker Fabric Corp., 6 F.3d 849, 855 (1st Cir.1993) (holding that a corporation that took control of an employer is an ERISA employer); Frank v. U.S. West, Inc., 3 F.3d 1357, 1363 n. 5 (10th Cir.1993) (holding that a parent corporation may be an ERISA employer). Indeed, the statute specifies "a group or association of employers acting for an employer in such capacity" as included within the definition of "employer." 29 U.S.C. Sec. 1002(5) (emphasis added).
 
 
 57
 Beyond that, "[c]ourts have found the phrase 'act ... indirectly in the interest of an employer' difficult to interpret." Massachusetts Laborers' Health & Welfare Fund v. Starrett Paving Corp., 845 F.2d 23, 24 (1st Cir.1988). For example, courts differ as to whether and under what circumstances officers or shareholders who "act in the interest" of an employer can be considered ERISA employers under Sec. 3. See Starrett, 845 F.2d at 24-25 (collecting cases); cf. United States v. Carson, 52 F.3d 1173, 1189 (2d Cir.1995) (finding that a union secretary-treasurer responsible for administering an ERISA plan fits the definition of "employer" in Sec. 1002(5)).
 
 
 58
 While the scope of the definition of employer is subject to debate, we conclude that the definition does not include a surety in this context. We are not dealing with any type of agency or ownership relationship or direct assumption of the employer's functions with regard to the administration of a plan. We are confronted only with a contractual relationship separate from the collective bargaining agreement by which the surety guaranteed payment of a certain sum if the contractor defaulted on its obligations. Our holding is consistent with the Ninth and Eleventh Circuits which have also held that a surety does not become an employer within the meaning of Sec. 3 simply by guaranteeing an employer's ERISA obligations. See Giardiello v. Balboa Ins. Co., 837 F.2d 1566, 1569 (11th Cir.1988); Xaros v. U.S. Fidelity & Guar. Co., 820 F.2d 1176, 1180 (11th Cir.1987); D & L Camp Constr., 738 F.2d at 1000-01; see also Carpenters Health & Welfare Trust Fund v. Tri Capital Corp., 25 F.3d 849, 855-56 (9th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 580, 130 L.Ed.2d 495 (1994) (nonsignatory to a collective bargaining agreement who agrees in another contract to pay by joint check the benefit contribution obligations of the signatory is not a Sec. 1002(5) "employer").
 
 
 59
 Moreover, an examination of Sec. 515 shows that Congress could not have contemplated a surety to be an ERISA "employer." Section 515 requires an employer to make all contributions it is obliged to make to a multi-employer plan "under the terms of the collectively bargained agreement." 29 U.S.C. Sec. 1145. New York Surety is not itself directly obligated under the terms of the collectively bargained agreement to make any contributions; its obligations arise solely under the bond.
 
 
 60
 Similarly, Congress could not have intended to penalize a party like New York Surety under Sec. 502(g)(2), 29 U.S.C. Sec. 1132(g)(2), for violating Sec. 515. New York Surety did not contribute to the employer's delinquency in making contributions and did not contest the nature or extent of the employer's obligations under the collective bargaining agreement. Indeed, the district court only avoided this harsh result by holding that although New York Surety was an employer for purposes of liability under Sec. 515, the penalties of Sec. 502(g)(2) were meant only for employers "in the strict sense of the word." The statute makes no such distinction and we find no basis to infer one. Cf. Ratzlaf v. United States, --- U.S. ----, ----, 114 S.Ct. 655, 660, 126 L.Ed.2d 615 (1994) (stating the basic canon of statutory construction that the same term should be given the same meaning in different parts of a statute).
 
 
 61
 Since a surety is not an "employer," an action on the bond does not provide an alternative remedy to force delinquent employers to make obligatory contributions. Thus, there is no conflict with Sec. 515 of ERISA that requires pre-emption under Ingersoll-Rand.[4]
 
 IV. Pendent-Party Doctrine
 
 62
 The Board argues finally that there is pendent-party jurisdiction since jurisdiction over Delta was originally proper, and the claim against New York Surety was sufficiently related to its claims against Delta. The Board concedes the inapplicability of 28 U.S.C. Sec. 1367, which provides for supplemental jurisdiction over claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy," including those that "involve the joinder or intervention of additional parties." 28 U.S.C. Sec. 1367(a). That statute, however, only applies to civil actions commenced on or after the date of its enactment, December 1, 1990, see IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1052 n. 2 (2d Cir.1993), cert. denied, --- U.S. ----, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994), and this action was commenced on November 21, 1989. Prior to the enactment of Sec. 1367, pendent-party jurisdiction was not authorized. See Finley v. United States, 490 U.S. 545, 556, 109 S.Ct. 2003, 2010-11, 104 L.Ed.2d 593 (1989). Therefore, the district court was correct in finding that it lacked pendent-party jurisdiction.
 
 
 63
 Accordingly, we reverse the decision in which the district court ruled that it had jurisdiction, Greenblatt v. Delta Plumbing & Heating Corp., 818 F.Supp. 623 (S.D.N.Y.1993), vacate all other orders in the case, and dismiss the complaint for lack of subject matter jurisdiction.
 
 
 
 [1]
 All citations are to the 1988 edition of the United States Code
 
 
 [2]
 "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. Sec. 1331
 
 
 [3]
 Our conclusion may be at odds with that of one of our sister circuits. In light of Supreme Court decisions prior to Blue Cross, the Ninth Circuit disavowed a former decision that ERISA did not pre-empt an action on a surety bond secured pursuant to a state contractor licensing statute. See Trustees of the Elec. Workers Health & Welfare Trust v. Marjo Corp., 988 F.2d 865, 867-68 (9th Cir.1993) (disavowing the pre-emption holding of Carpenters S. Cal. Admin. Corp. v. D & L Camp Constr. Co., 738 F.2d 999, 1000-01 (9th Cir.1984))
 
 
 [4]
 Moreover, even if another ground for pre-emption were found other than conflict with Sec. 502(a), there would be no jurisdiction under Sec. 502(f) since the Board would not have a cause of action against New York Surety under Sec. 502(a). See Taylor, 481 U.S. at 66, 107 S.Ct. at 1547-48. As stated above, in order to find jurisdiction on the basis of ERISA pre-emption, the pre-empted claim must fall within the civil enforcement provision of ERISA, Sec. 502(a)