**INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 57, AFL–CIO (I.U.O.E. Local 57), Edwin L. Sullivan, Jr., Stephen A. Cardi, Thomas D. Gammino, as Trustees of I.U.O.E. Local 57 Health and Welfare Fund, Edwin L. Sullivan, Jr., Michael A. Gammino, III, Antonio B. Cardi, as Trustees of I.U.O.E. Local 57 Pension Fund, Edwin L. Sullivan, Jr., Michael A. Gammino, III, Antonio B. Cardi, as Trustees of I.U.O.E. Local 57 Annuity Fund, Edwin L. Sullivan, Jr., Thomas Zoppo, Stephen Lynch, as Trustees of I.U.O.E. Local 57 Legal Services Fund, Edwin L. Sullivan, Jr., Thomas Zoppo, Stephen Lynch, as Trustees of I.U.O.E. Local 57 Apprenticeship and Skill Improvement Fund, Michael A. Gammino, III, Antonio B. Cardi, Michael V. D'Ambra, Stephen Lynch, as Trustees of the Rhode Island Heavy & Highway Construction Industry Advancement Fund, Plaintiffs,**

v.

**SEABOARD SURETY COMPANY, Defendant.**

Civil Action No. 95–519L.

United States District Court, D. Rhode Island.

Nov. 25, 1996.

Louis V. Jackvony, Jackvony & Jackvony, Lincoln, RI, for Plaintiffs.

Michael P. Duffy, Peabody & Arnold, Boston, MA, for Defendant.

## MEMORANDUM AND ORDER

LAGUEUX, Chief Judge.

This is a suit to recover delinquent employer contributions to employee benefit plans under the Employee Retirement Income Security Act of 1974 ("ERISA"). The plaintiffs, Local 57 of the International Union of Operating Engineers ("Local 57") and the trustees of certain funds maintained by Local 57, seek to collect the unpaid contributions under a labor and materials payment bond posted to secure an employer's obligations in ·a public construction project. The matter is presently before the Court on a motion by defendant Seaboard Surety Company ("Seaboard") to dismiss the action for lack of subject matter jurisdiction. For the reasons that follow, that motion is granted.

### I. Background

The facts in this case are uncomplicated. The Earthline Corporation ("Earthline") is a New York corporation engaged in the construction business. On May 1, 1992, Earthline entered into a collective bargaining agreement with Local 57 for the period May 1, 1992 to April 30, 1995. As part of the union employee compensation provided by this agreement, Earthline was obligated to make specified contributions to a number of employee benefit funds maintained by Local 57 ("the Local 57 Funds") for every hour worked by a union employee.

On April 14, 1993, Earthline entered into a construction contract with the Narragansett Bay Water Quality Management District Commission for work on a sewer project in the Town of North Providence, Rhode Island. Eight members of Local 57 worked for Earthline on this project from November 1993 to January 1994. Based upon the hours worked by these union employees, plaintiffs allege that Earthline was obligated to contribute $10,120.30 to the Local 57 Funds under the terms of the collective bargaining agreement. Plaintiffs claim that Earthline never made any of the contributions due to the Local 57 Funds, and further assert on information and belief that Earthline is currently insolvent and in bankruptcy.

In connection with the North Providence project, Earthline had obtained a labor and materials payment bond from Seaboard, as required under the Rhode Island contractors' bond statute.[1] Because of Earthline's insolvency, plaintiffs have resorted to this bond for satisfaction of the unpaid benefit plan obligations. After Seaboard denied plaintiffs' request for payment of Earthline's obligations, plaintiffs filed the present action in this Court against Seaboard to compel payment under § 502(a) of ERISA, 29 U.S.C. § 1132(a).

Seaboard filed a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), asserting that the plaintiffs' claim does not arise under federal law. In short, Seaboard argues that since it is not an "employer" as that term is defined by ERISA, plaintiffs cannot maintain an action against Seaboard under that statute, and thus no federal cause of action exists. After hearing arguments of counsel, the Court took the matter under advisement. The motion is now in order for decision.

## II. Discussion

It is axiomatic that every cause of action in federal court must have a jurisdictional basis. In the present case, while the complaint makes passing reference to diversity of citizenship, it is clear that this Court's jurisdiction cannot be based on diversity, as the amount in controversy falls short of the $50,000 jurisdictional threshold. 28 U.S.C. § 1332(a).[2] Therefore, the only possible basis for subject matter jurisdiction in this case is the federal question jurisdiction of 28 U.S.C. § 1331.[3]

Plaintiffs assert that federal question jurisdiction exists in this case because their claim arises under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C.

§ 1001 *et seq.* (1994). Federal jurisdiction over ERISA claims is explicitly granted by § 1132(f),[4] which provides that federal district courts shall have jurisdiction of civil actions brought under § 1132(a). Section 1132(a) in turn provides for a private cause of action to enforce the provisions of the statute dealing with the protection of employee benefit rights.

In opposing Seaboard's motion to dismiss, plaintiffs claim that this is properly an action under § 1132(a) to enforce an ERISA provision. Specifically, plaintiffs maintain that this is an action to enforce § 1145 of the statute, which imposes an obligation upon employers to contribute to employee benefit plans in accordance with any contractual obligations they might have:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145 (1994). Therefore, plaintiffs' theory of jurisdiction is necessarily this: Seaboard is an "employer obligated to make contributions ... under the terms of a collectively bargained agreement," and that this is a suit to enforce that obligation under § 1132(a).

Of course, the critical issue presented by plaintiffs' argument is whether Seaboard can be considered an "employer" under ERISA. The definition of "employer" in ERISA includes:

> [A]ny person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association

---

**1.** The specific subsection of the statute applicable to this action is R.I.Gen.Laws § 37–13–14 (Supp. 1995), which adopts the terms and conditions of the state contractors' bond statute, R.I.Gen.Laws § 37–12–1 *et seq.* (1990).

**2.** It is now $75,000.

**3.** "The district courts shall have original jurisdiction of all civil actions arising under the Consti-

tution, laws, or treaties of the United States." 28 U.S.C. § 1331 (1994).

**4.** "The district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action." 29 U.S.C. § 1132(f) (1994).

of employers acting for an employer in such capacity.

29 U.S.C. § 1002(5) (1994). Therefore, the question for the Court is whether Seaboard can come within this definition when it guaranteed payment of Earthline's obligations arising out of the North Providence sewer project.

■ While the First Circuit has not yet reached this issue, the Second, Ninth, and Eleventh Circuits have all concluded that a surety does not become an "employer" within the meaning of § 1002(5) simply by guaranteeing an employer's obligations. *See Greenblatt v. Delta Plumbing & Heating Corp.*, 68 F.3d 561, 575–76 (2d Cir.1995); *Giardiello v. Balboa Ins. Co.*, 837 F.2d 1566, 1569–70 (11th Cir.1988); *Carpenters S. Cal. Admin. Corp. v. D & L Camp Constr. Co.*, 738 F.2d 999, 1000–01 (9th Cir.1984).[5] On the basis of these and other precedents, this Court holds that Seaboard did not become an ERISA "employer" by virtue of its execution of a labor and materials payment bond on Earthline's behalf.

Plaintiffs make no contention that Seaboard was acting *directly* as the employer in this case. Seaboard can be considered an "employer" under § 1102(5) only if it was acting "indirectly in the interest of [Earthline], in relation to an employee benefit plan." As the First Circuit has recognized, "[c]ourts have found the phrase 'act ... indirectly in the interest of an employer' difficult to interpret." *Massachusetts Laborers' Health & Welfare Fund v. Starrett Paving Corp.*, 845 F.2d 23, 24 (1st Cir.1988). However, there are sufficient guideposts available in this case to make a reasoned decision.

In *Starrett Paving*, the Court noted that the definition of "employer" in ERISA was similar to that expressed in the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203(d),[6] and found that both statutes were intended to give "employer" a "broader-than-common-law" meaning. *Id.* at 24–25. Thus, the Court concluded that an entity could be found to act "indirectly in the interest of an employer" where the "economic realities" were such that the entity had undertaken the administrative or payment duties of the direct employer in relation to an ERISA plan. *See id.* (sole shareholder can be ERISA "employer" even without piercing the corporate veil); *see also Simas v. Quaker Fabric Corp.*, 6 F.3d 849, 854–56 (1st Cir.1993) (benefit payments made by controlling corporation to employees of a subsidiary company are "in the interest of" the subsidiary/employer); *Donovan v. Agnew*, 712 F.2d 1509, 1510–11 (1st Cir.1983) ("economic realities" inform who can be deemed an "employer" under the FLSA).

The Court believes that the "economic realities" in this case do not dictate that a surety should be deemed an "employer" under ERISA. Surety companies do not undertake any administrative duties with regard to a benefit plan, nor do they actively assume an employer's payment obligations to such a plan on a regular basis. *See Greenblatt*, 68 F.3d at 575 (surety contract does not create "the type of agency or ownership relationship or direct assumption of the employer's functions with regard to the administration of a plan" required of an ERISA "employer"). The "economic realities" of the employer-surety relationship are that the employer conducts the day-to-day operations as usual, including the administration of any benefit plans, while the surety is simply a guarantor of the employer's obligations to employees and others. The situation thus is

---

**5.** It should be noted that part of the holding of the *D & L Camp* case was overruled by the Ninth Circuit's subsequent decision in *Trustees of the Elec. Workers Health & Welfare Trust v. Marjo Corp.*, 988 F.2d 865, 867–68 (9th Cir.1993) (disavowing preemption holding of *D & L Camp*). The portion of the *D & L Camp* decision that discussed whether a surety can be an "employer" was undisturbed, however, and remains good law in that circuit. *See Carpenters Health and Welfare Trust Fund for Cal. v. Tri Capital Corp.*, 25 F.3d 849, 856 n. 8 (9th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 580, 130 L.Ed.2d 495 (1994)

(noting that relevant portion of *D & L Camp* remains valid).

**6.** Under the FLSA, an "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization." 29 U.S.C. § 203(d) (1994).

very different than that in *Starrett Paving* or *Simas*. Therefore, there is no basis for imposing liability on Seaboard as an "employer" under ERISA in this case.

In addition, courts have raised the question of whether a surety company is acting "in the interest of" the employer, as required by § 1002(5), or in the interest of other parties when it backs up a contractor's obligations. According to some courts, when a surety guarantees a contractor's obligations pursuant to a contractors' bond statute (as Seaboard did here), it is acting not for the benefit of the contractor, but instead to protect those that might be damaged by the contractor's failure to pay. *See, e.g., Giardiello,* 837 F.2d at 1569. Viewed in this way, the surety is not acting "in the interest of" the *employer,* but rather in the interest of the *employees* and other beneficiaries of the bond. Accordingly, a surety fails to meet the definitional requirements of "employer" under § 1002(5). *Id.*

Moreover, it should be observed that § 1002(5) provides what amounts to a two-part definition of an "indirect" employer: (1) one who acts in the interest of an employer, (2) in relation to an employee benefit plan. In this case, even if Seaboard was acting "in the interest of" Earthline, the second part of the definition poses an insurmountable obstacle. The duties or obligations assumed by Seaboard were not "in relation to an employee benefit plan" at all, but instead "in relation to" one of Earthline's construction projects. As the connection between the surety bond and the benefit plan is a secondary one, it is insufficient to transform Seaboard into an ERISA "employer" in this case.[7]

Finally, the Court notes that where (as here) an ERISA suit is brought to enforce the terms of a collective bargaining agreement, courts have shown an unwillingness to expand the definition of "employer"

to include parties that were not signatories to the collective bargaining agreement. *See Giardiello,* 837 F.2d at 1569–70; *Xaros v. U.S. Fidelity & Guar. Co.,* 820 F.2d 1176, 1178–80 (11th Cir.1987). Such hesitance is justified in light of the language of § 1145, the ERISA provision that provides the basis for the present suit. As the First Circuit has observed, § 1145 does not create an independent obligation to contribute to an employee benefit fund; it simply imposes a federal statutory duty to honor a prior contractual obligation to make contributions to such a fund. *See Starrett Paving,* 845 F.2d at 25–26 (adopting "plain meaning" of § 1145). Therefore, based on the statutory language, courts have concluded that § 1145 should not be used as the basis for the recovery of delinquent contributions from a surety company, where the surety's obligations arise not under the terms of a collective bargaining agreement, but solely under a separate bond contract. *See Greenblatt,* 68 F.3d at 576. A contrary holding would miscast ERISA to create an independent obligation to contribute to a pension plan in violation of the clear directive of the statute. *See Xaros,* 820 F.2d at 1179–80 (recovery from the surety "would constitute an unwarranted departure from the language of, and intent underlying, sections 1002(5) and 1145").

Faced with these arguments, plaintiffs respond that a dismissal here would leave them unable to recover the amounts due the Local 57 Funds from any source. The contention, in short, is this: because Earthline is in bankruptcy, the only possible source for recovery of the unpaid plan contributions is the bond securing Earthline's labor and materials obligations.[8] They suggest that a direct action under this bond cannot be brought anywhere in light of the broad sweep of the preemption provision of ERISA, 29 U.S.C. 1144(a), and a recent First Circuit decision

---

7. *Greenblatt* illustrates the limits of what a surety could do "in relation to an employee benefit plan." The surety there specifically guaranteed an employer's ERISA-plan obligations, where a collective bargaining agreement required such a bond. *See Greenblatt,* 68 F.3d at 575–76. Nonetheless, the Second Circuit held that even this degree of involvement was not enough to deem the surety an "employer" under ERISA. *Id.* In light of this decision, it is hard to see any circumstance under which that Court would deem a surety an "indirect" employer.

8. It is unclear from the record whether or not plaintiffs have attempted to recover the unpaid contributions as a creditor in Earthline's bankruptcy proceeding, or whether such a course of action remains viable.

holding that an action against a surety under the Massachusetts contractors' bond statute was preempted by ERISA, *Williams v. Ashland Eng'g Co.*, 45 F.3d 588, 591 (1st Cir.), *cert. denied,* — U.S. —, 116 S.Ct. 51, 133 L.Ed.2d 16 (1995). Plaintiffs thus see themselves trapped in a "Catch 22": while the precedents deny recovery under ERISA, the statute also preempts any other cause of action to recover the unpaid contributions from a surety. Therefore, they have asked this Court to grant them an escape from the "Catch 22" by allowing their ERISA cause of action against Seaboard to proceed in this Court.

The Court is not swayed by plaintiffs' argument. First, while the Court cannot and does not decide this issue here, plaintiffs may not want to concede the preemption issue as easily as they have done in their arguments before this Court. While it is true that the preemption provision of ERISA is "conspicuous for its breadth," *FMC Corp. v. Holliday,* 498 U.S. 52, 58, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990), ERISA preemption is not without limitation. *See McCoy v. Massachusetts Inst. of Technology,* 950 F.2d 13, 16–18 (1st Cir.1991), *cert. denied,* 504 U.S. 910, 112 S.Ct. 1939, 118 L.Ed.2d 545 (1992) ("Despite the fact that [it] casts a long shadow, ERISA preemption is not limitless."). Moreover, the contractors' bond statute invalidated by the First Circuit in *Williams* is distinguishable from its Rhode Island counterpart: unlike the Rhode Island statute, the preempted Massachusetts statute "specifically refer[ed] to ERISA-regulated employee benefit plans, and provide[d] them with a special source of recovery for unpaid employ-

er contributions." *Williams,* 45 F.3d at 591; *see also McCoy,* 950 F.2d at 18–20 (mechanics' lien law preempted on ground that it "expressly grant[ed] preferential benefits to ERISA plans"). The Court notes that at least one circuit has found that surety laws of more general application are not preempted by ERISA. *See Bleiler v. Cristwood Constr., Inc.,* 72 F.3d 13, 16 (2d Cir.1995); *Greenblatt,* 68 F.3d at 573–76.[9]

Furthermore, even if plaintiffs' action to recover under the bond is found to be preempted by ERISA, the resulting "Catch 22" would nonetheless be insufficient to affect the outcome here. First, this would not be a case where the "complete preemption" rationale of *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 62–66, 107 S.Ct. 1542, 1545–48, 95 L.Ed.2d 55 (1987), would apply to grant this Court federal jurisdiction over a preempted state claim. In *Taylor,* the Court recognized that the preemptive force of ERISA could create federal question jurisdiction over a state law claim where (1) ERISA preempts the state law cause of action, and (2) the preempted claim is within the enforcement provisions of § 1132(a). *Id.* Plaintiffs' state law surety claim would not meet the second prong of this test because of the Court's conclusion that a claim against Seaboard is not within ERISA's enforcement provision, 29 U.S.C. § 1132(a). *See Greenblatt,* 68 F.3d at 576 n. 4 (no jurisdiction on the basis of ERISA preemption where defendant surety was not an "employer" and thus not subject to enforcement provisions of § 1132(a)).

Finally, the mere fact that ERISA preemption might place plaintiffs in an untena-

---

**9.** In *Greenblatt,* the Second Circuit first discussed two recent Supreme Court decisions which it viewed as scaling-back the reach of ERISA preemption. *See New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* — U.S. —, — – —, 115 S.Ct. 1671, 1676–83, 131 L.Ed.2d 695 (1995); *Mackey v. Lanier Collection Agency & Serv., Inc.,* 486 U.S. 825, 830–41, 108 S.Ct. 2182, 2185–92, 100 L.Ed.2d 836 (1988). The Court then went on to find that a state cause of action brought by an ERISA plan to recover on a surety bond was not preempted by ERISA:

> Here, state surety law makes no explicit reference to ERISA plans and does not bind the hands of ERISA trustees or regulate them in

> any fashion... . At most, some provision of state surety law might affect the collectability of funds owed to a plan. A law having only such an indirect effect on plan assets is exactly the kind that *Blue Cross* and *Mackey* save from the pre-emptive sweep of [§ 1144(a) ]. A claim on a surety bond is but a "run-of-the-mill state law claim[ ]," similar to tort or non-plan-related contract actions to which ERISA plans may be a party. "[A]lthough obviously affecting and involving ERISA plans," surety bond claims are not pre-empted by [§ 1144(a) ].

*Greenblatt,* 68 F.3d at 574. (citations omitted) (quoting *Mackey,* 486 U.S. at 833, 108 S.Ct. at 2187).

ble situation is not enough to justify jurisdiction here. While the First Circuit has recognized that ERISA preemption might in some instances place employee benefit plans in the "Catch 22" position cited by plaintiffs, it is up to Congress, not the federal courts, to provide an escape from that predicament:

> Congress has written a manifestly broad preemption statute, the courts with few exceptions have interpreted it broadly, and our job is to carry out that mandate.... [The] ERISA preemption clause [is one] whose full ramifications may not have been absorbed by Congress. But the ramifications are inherent to the statute, and are not for us to curtail.

> It may also seem ironic that a federal statute enacted in large part to protect workers should invalidate a state measure that has worker protection as one of its primary objectives. But ERISA, like many a reform statute, has more than one purpose and more than one beneficiary. The uniformity of regulation gained by employers under ERISA was assuredly part of the legislative balancing of interests and trade-offs. Courts, who are the least representative branch of government, are the wrong place to restrike the balance.

*Simas,* 6 F.3d at 856 (citations omitted).

### III. Conclusion

For the foregoing reasons, the Court grants Seaboard's motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). Plaintiffs should have a state law claim against Seaboard on the bond in Rhode Island state courts. Moreover, it is possible that a federal court could have pendent jurisdiction over this state law bond claim, if a primary ERISA suit is brought against an "employer," i.e., Earthline.[10] However, as Seaboard is not an "employer" under § 1002(5) of ERISA, plaintiffs do not have an ERISA claim against Seaboard in this case. Accordingly, since no federal question exists in this case, the Court is without jurisdiction to resolve the present dispute. The Clerk

10. *See Hetchkop v. Gundolt Carpet Workroom, Inc.,* 841 F.Supp. 113, 115–16 (S.D.N.Y.1994) (where base ERISA claim was properly brought against insolvent employer, pendent jurisdiction

will enter judgment dismissing this case for lack of subject matter jurisdiction forthwith.

It is so ordered.

under 28 U.S.C. § 1367(a) would lie for federal court to hear state law bond claim against surety company).