**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| HOWARD JARVIS TAXPAYERS ASSOCIATION; JONATHAN MARK COUPAL; DEBRA A. DESROSIERS, *Plaintiffs-Appellants*, | No. 20-15591 |
| | D.C. No. 2:18-cv-01584-MCE-KJN |
| v. | |
| CALIFORNIA SECURE CHOICE RETIREMENT SAVINGS PROGRAM; JOHN CHIANG, California State Treasurer, *Defendants-Appellees*. | OPINION |

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, Jr., District Judge, Presiding

Argued and Submitted February 8, 2021
San Francisco, California

Filed May 6, 2021

Before: Andrew D. Hurwitz and Daniel A. Bress, Circuit
Judges, and Clifton L. Corker,* District Judge.

Opinion by Judge Bress

---

* The Honorable Clifton L. Corker, United States District Judge for the Eastern District of Tennessee, sitting by designation.

**SUMMARY**[**]

**Employee Retirement Income Security Act**

Affirming the district court's dismissal, the panel held that ERISA does not preempt a California law that creates CalSavers, a state-managed individual retirement account program for eligible employees of certain private employers that do not provide their employees with a tax-qualified retirement savings plan.

The panel held that Congress's repeal of a 2016 Department of Labor rule that sought to exempt CalSavers from ERISA under a safe harbor did not resolve the preemption question. Further, even if ERISA's safe harbor did not apply to CalSavers, the panel would still need to determine whether CalSavers otherwise qualified as an ERISA program.

The panel concluded that CalSavers is not an ERISA plan because it is established and maintained by the State, not employers; it does not require employers to operate their own ERISA plans; and it does not have an impermissible reference to or connection with ERISA. Nor does CalSavers interfere with ERISA's core purposes. Accordingly, ERISA does not preempt the California law.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Laura E. Dougherty (argued), Jonathan M. Coupal, and Timothy A. Bittle, Howard Jarvis Taxpayers Foundation, Sacramento, California, for Plaintiffs-Appellants.

Sharon L. O'Grady (argued), Deputy Attorney General; Paul Stein, Supervising Deputy Attorney General; Thomas S. Patterson, Senior Assistant Attorney General; Office of the Attorney General, San Francisco, California; R. Bradford Huss, Joseph C. Faucher, and Angel L. Garrett, Trucker Huss APC, San Francisco, California; for Defendants-Appellees.

Peter K. Stris, Rachana A. Pathak, Douglas D. Geyser, and John Stokes, Stris & Maher LLP, Los Angeles, California; Barbara R. Van Zomeren, Ascensus LLC, Brainerd, Minnesota; for Amicus Curiae Ascensus LLC.

Dara S. Smith and William Alvarado Rivera, AARP Foundation Washington, D.C.; Jeffrey Lewis, Erin Riley, and Rachel E. Morowitz, Keller Rohrback LLP, Seattle, Washington; for Amici Curiae AARP, AARP Foundation, California Hispanic Chamber of Commerce, Small Business California, Small Business Majority, Unidosus, United Ways of California, and Western Center on Law and Poverty.

Ellen F. Rosenblum, Attorney General, Office of the Attorney General, Salem, Oregon; Kwame Raoul, Attorney General; Jane Elinor Notz, Solicitor General; Sarah A. Hunger, Deputy Solicitor General; Office of the Attorney General, Chicago, Illinois; for Amici Curiae States of Illinois and Oregon.

**OPINION**

BRESS, Circuit Judge:

This case presents a novel and important question in the law governing retirement benefits: whether the federal Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.*, preempts a California law that creates a state-managed individual retirement account (IRA) program. The program, CalSavers, applies to eligible employees of certain private employers in California that do not provide their employees with a tax-qualified retirement savings plan. Eligible employees are automatically enrolled in CalSavers, but may opt out. If they do not, their employer must remit certain payroll deductions to CalSavers, which funds the employees' IRAs. California manages and administers the IRAs and acts as the program fiduciary. Citing a need to encourage greater savings among future retirees, other States have enacted similar state-managed IRA programs in recent years. To our knowledge, this is the first case challenging such a program on ERISA preemption grounds.

We hold that the preemption challenge fails. CalSavers is not an ERISA plan because it is established and maintained by the State, not employers; it does not require employers to operate their own ERISA plans; and it does not have an impermissible reference to or connection with ERISA. Nor does CalSavers interfere with ERISA's core purposes. ERISA thus does not preclude California's endeavor to encourage personal retirement savings by requiring employers who do not offer retirement plans to participate in CalSavers. We therefore affirm the judgment of the district court.

I

A

In 2017, the California Legislature enacted the CalSavers Retirement Savings Trust Act, which implemented the CalSavers program (previously known as "California Secure Choice"). *See* Cal. Gov't Code § 100000, *et seq*. CalSavers is a state-run IRA savings program for certain private employees. *See id.* §§ 100002, 100004, 100008. Its objective is to encourage greater retirement savings among employees whose employers do not offer retirement plans. *See* Savings Arrangements Established by States for Non-Governmental Employees, 81 Fed. Reg. 59464, 59464–65 (Aug. 30, 2016) (describing how California and other states have enacted "automatic enrollment" programs to "encourage employees to establish tax-favored IRAs funded by payroll deductions").

CalSavers's automatic enrollment requirement applies only to an "Eligible employee" of an "Eligible employer." Cal. Gov't Code §§ 100000(c)–(d), 100032. Eligible employees are defined as California employees who are at least eighteen years old and employed by an eligible employer. *Id.* § 100000(c); Cal. Code Regs. tit. 10, § 10000(l), (n). Eligible employers are defined as non-governmental employers with five or more employees in California. Cal. Gov't Code § 100000(d); Cal. Code Regs. tit. 10, § 10000(m). The sole exclusion is for an "Exempt Employer," Cal. Code Regs. tit. 10, § 10000(q), that provides either an "employer-sponsored retirement plan" or an "automatic enrollment payroll deduction IRA" that "qualifies for favorable federal income tax treatment." Cal. Gov't Code § 100032(g)(1).

Compliance with CalSavers is mandatory for non-exempt eligible employers, who must register with the CalSavers program. *Id.* § 100032(b)–(d); Cal. Code Regs. tit. 10, § 10002. Exempt employers may, but are not required to, inform the CalSavers Administrator of their exemption. Cal. Code Regs. tit. 10, § 10001(d). Eligible employers who later become ineligible (for example, those who later create their own ERISA plans) must inform the CalSavers Administrator within 30 days of their change in status. *Id.* § 10001(c). Exempt employers are "prohibited from participating in the Program." *Id.* § 10002(d).

CalSavers describes itself as "a state-administered program, not an employer-sponsored program." Cal. Gov't Code § 100034(b). To that end, CalSavers forbids employers from taking a variety of actions. Employers may not "[r]equire, endorse, encourage, prohibit, restrict, or discourage employee participation in" CalSavers. Cal. Code Regs. tit. 10, § 10003(d)(1). Nor may employers advise employees regarding CalSavers contribution rates or investment decisions or "[e]xercise any authority, control, or responsibility regarding" the program. *Id.* § 10003(d)(2), (4). Employers "are prohibited from contributing to a Participating Employee's Account." *Id.* § 10005(c)(1). Employers also "shall not have any liability for an employee's decision to participate in, or opt out of, the program"; "shall not be a fiduciary, or considered to be a fiduciary over the trust or the program"; "shall not be liable as plan sponsors"; and "shall not bear responsibility for the administration, investment, or investment performance of the program." Cal. Gov't Code § 100034(a), (b).

Anticipating the legal challenge we address here, the statute creating CalSavers maintains that "the roles and responsibilities of employers" have been defined "in a

manner to keep the program from being classified as an employee benefit plan subject to the federal Employee Retirement Income Security Act [(ERISA)]." Cal. Gov't Code § 100043(b)(1)(C). CalSavers imposes three basic duties on eligible employers. They must first register for CalSavers by providing their basic identification and contact information. Cal. Code Regs. tit. 10, § 10002(f). Within thirty days of registration, they must provide CalSavers with certain contact and identifying information for their eligible employees. *Id.* § 10003(a). They must also set up "a payroll deposit retirement savings arrangement," Cal. Gov't Code § 100032(b), through which they can remit employees' contributions to the CalSavers Trust. Cal. Code Regs. tit. 10, § 10003(c). Regulations set a 5% default rate of contribution, though employees may adjust their rate. *Id.* § 10005(a)(1), (b)(1). An eligible employer that "fails to allow its eligible employees to participate" in CalSavers is subject to penalties. Cal. Gov't Code § 100033(b).

After an eligible employer registers with CalSavers, the CalSavers Administrator delivers to all eligible employees an information packet describing the program. Cal. Code Regs. tit. 10, § 10004(a). Upon receiving the information packet, employees have thirty days to opt out; otherwise, they are automatically enrolled in CalSavers. *Id.* § 10004(b). Employees may opt out electronically, by telephone, or by mail. *Id.* § 10004(d); *see also* Cal. Gov't Code § 100032(f)(1). Even after enrollment, employees may opt out of CalSavers at any time. Cal. Code Regs. tit. 10, § 10004(d). Employees' contributions are made to a Roth IRA, *id.* § 10005(a)(3), but employees may choose to recharacterize all or some of their contributions to a traditional IRA, *id.* § 10005(c)(4). They may roll over or

transfer funds into their CalSavers IRA at any time.  *Id.*
§ 10007(b).[1]

The statute and regulations also describe how eligible
employers can become ineligible for CalSavers, and how
employees can make changes to their CalSavers accounts.
For example, if an eligible employer later adopts its own
"employer-sponsored retirement plan" or qualifying
"automatic enrollment payroll deduction IRA," CalSavers
no longer applies.  Cal. Gov't Code § 100032(g)(1)–(2).
Eligible employees are also given guidance on how they may
withdraw their CalSavers contributions.  *See id.*
§ 100014(b)(4).  Any individual who is over eighteen can
also choose to participate in CalSavers "outside of an
employment relationship with an Eligible Employer."  Cal.
Code Regs. tit. 10, § 10006(a).

The Act that implemented CalSavers also created a nine-
member California Secure Choice Retirement Savings
Board, a public body "within state government," that is
charged with managing and administering the CalSavers
Retirement Savings Trust.  Cal. Gov't Code §§ 100002,
100004.  The Board is authorized to fund the Trust with the
contributions received from employers through employee
payroll deductions, invest the Trust funds (or delegate
investment to private money managers), and pay operating
costs using Trust funds. *See id.* § 100004.

California is phasing in CalSavers according to the size
of an employer's workforce. *Id.* § 100032(b)–(d); Cal. Code
Regs. tit. 10, § 10002(a)(1)–(3).  As of October 12, 2020,
California reports that 4,324 employers had registered for

---

[1] We grant California's request for judicial notice of background
materials on the CalSavers website.

CalSavers and nearly 90,000 California workers had enrolled. Approximately 36% of eligible employees have opted out.

Several other states and the City of Seattle have adopted government-run auto-enrollment IRA programs like CalSavers. *See* Colorado Secure Savings Program Act, Colo. Rev. Stat. Ann. §§ 24-54.3-101, *et seq.*; Connecticut Retirement Security Exchange, Conn. Gen. Stat. Ann. §§ 31-418, *et seq.*; Illinois Secure Choice Savings Program Act, 820 Ill. Comp. Stat. Ann. §§ 80/1, *et seq.*; Maryland Small Business Retirement Savings Program, Md. Code Ann., Lab. & Empl. §§ 12-401, *et seq.*; New Jersey Secure Choice Savings Program Act, N.J. Stat. Ann. §§ 43:23-13, *et seq.*; Oregon Retirement Savings Plan, Or. Rev. Stat. Ann. §§ 178.200, *et seq.*; Seattle Retirement Savings Plan, Seattle Mun. Code §§ 14.36.010, *et seq.*; *see also* 81 Fed. Reg. at 59464–65 (describing programs in different states); *State-Facilitated Retirement Savings Programs: A Snapshot of Program Design Features*, State Brief 20-02, Georgetown Univ. (Aug. 31, 2020), https://cri.georgetown.edu/wp-content/uploads/2018/12/CRI-State-Brief-20-02.pdf (last accessed Apr. 1, 2021).

B

Howard Jarvis Taxpayers Association and two of its employees (collectively, "HJTA") filed this action against the CalSavers program and the Chairman of the CalSavers Board in his official capacity. HJTA alleged that ERISA preempts CalSavers and that CalSavers should also be enjoined under California Code of Civil Procedure Section 526a as a waste of taxpayer funds.

HJTA is a public interest organization that seeks to promote taxpayer rights. But it filed this challenge in its

capacity as a California employer.  HJTA alleged that it meets the definition of an eligible employer and does not operate its own employee retirement program.  HJTA therefore has standing to bring this action, and the controversy is ripe because HJTA plausibly alleges that it will soon be subject to CalSavers.  *See, e.g.*, *Leeson v. Transam. Disability Income Plan*, 671 F.3d 969, 978–79 (9th Cir. 2012); *Inland Empire Chapter of Associated Gen. Contractors of Am. v. Dear*, 77 F.3d 296, 299 (9th Cir. 1996).  The HJTA employees also have standing as future participants in what they claim is an ERISA plan.  *See* 29 U.S.C. § 1132(a)(3); *Leeson*, 671 F.3d at 978–79.

The district court granted California's motion to dismiss, concluding that ERISA does not preempt CalSavers.  The district court also declined to exercise supplemental jurisdiction over HJTA's state law claim.  HJTA timely appealed to this Court, and we review the district court's ruling on preemption *de novo*.  *Hickcox-Huffman v. US Airways, Inc.*, 855 F.3d 1057, 1060 (9th Cir. 2017).[2]

II

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" that ERISA covers.  29 U.S.C. § 1144(a).  Is CalSavers such a law?  No court has yet addressed whether a state-administered IRA program like CalSavers falls within ERISA's ambit.  The issue initially seems close because

---

[2] After supporting HJTA in the district court, the Department of Labor (DOL) initially filed an amicus brief supporting HJTA on appeal.  Later, and after a change in presidential administrations, DOL informed us that it no longer wished to participate as amicus and does not support either side.  Several organizations and the States of Oregon and Illinois have filed amicus briefs supporting California.

ERISA's preemption provision is expansive, and CalSavers concerns benefits in a general sense. But closer inspection of the governing precedents and CalSavers' design shows that HJTA's broad ERISA preemption challenge to CalSavers cannot be sustained.

A

We first address a threshold question relating to whether Congress has already resolved this issue when it rejected a 2016 Department of Labor rule that sought to exempt CalSavers from ERISA under a safe harbor. We hold that Congress's repeal of that rule does not provide an answer to the preemption question.

DOL has issued regulations exempting certain types of plans from ERISA. *See* 29 U.S.C. § 1135 (authorizing the Secretary of Labor to "prescribe such regulations as he finds necessary or appropriate to carry out the provisions of this subchapter"); 29 C.F.R. §§ 2510.3-1(j), 2510.3-2(b), (d); *see generally Sgro v. Danone Waters of N. Am., Inc.*, 532 F.3d 940, 942 (9th Cir. 2008); *Stuart v. UNUM Life Ins. Co. of Am.*, 217 F.3d 1145, 1149 (9th Cir. 2000). If a plan or program is exempt from ERISA under a safe harbor, there is no need to determine whether ERISA preempts the law authorizing it.

In 1975, DOL promulgated a regulation exempting certain IRA payroll deduction programs from ERISA. *See* 29 C.F.R. § 2510.3-2(d). For an IRA program to qualify for the 1975 Safe Harbor, it must meet four criteria: (i) "[n]o contributions are made by the employer"; (ii) "[p]articipation is *completely voluntary* for employees"; (iii) the employer's "sole involvement" is "without endorsement to permit the sponsor to publicize the program to employees or members, to collect contributions through

payroll deductions," and "to remit them to the sponsor"; and (iv) the employer receives "no consideration . . . other than reasonable compensation" for the cost of completing payroll deductions. *Id.* (emphasis added).

DOL has taken the position that the "completely voluntary" requirement in the 1975 Safe Harbor "mean[s] that the employee's enrollment in the program must be self-initiated," *i.e.*, that "the decision to enroll in the program must be made by the employee, not the employer." 81 Fed. Reg. at 59465. We have also held that when benefit coverage is "automatic for all [eligible] employees," "it [i]s not 'completely voluntary'" under the 1975 Safe Harbor. *Qualls ex rel. Qualls v. Blue Cross of Cal., Inc.*, 22 F.3d 839, 844 (9th Cir. 1994).

In a 2016 rulemaking, DOL concluded that state-run IRA programs like CalSavers, which require automatic participant enrollment with "opt-out" rights, were not "completely voluntary" and thus did not fall within the 1975 Safe Harbor. 81 Fed. Reg. at 59465. But DOL at the same time recognized that "states have a substantial government interest to encourage retirement savings in order to protect the economic security of their residents." *Id.* at 59464. The question remained, however, whether ERISA would preempt CalSavers and other like programs. DOL took no position on that question in its 2016 rulemaking. *See id.* at 59467 ("The safe harbors in this section should not be read as implicitly indicating the Department's views on the possible scope of [29 U.S.C. § 1144(a)]."). But DOL recognized that "uncertainty" over ERISA preemption "has created a serious impediment to wider adoption of state payroll deduction savings programs." *Id.* at 59465.

To "remove [that] uncertainty" and promote state-run IRA programs, DOL in 2016 added a new safe harbor

exemption, entitled "Savings Arrangements Established by States for Non-Governmental Employees." 81 Fed. Reg. 59464; *see also* 29 C.F.R. § 2510.3-2(h) (2016). The 2016 Safe Harbor was intended to ensure that state-run IRA programs, including CalSavers, would be treated as outside ERISA. *See* 81 Fed. Reg. 59466. For a program to qualify for the 2016 Safe Harbor, employee participation need only be "voluntary" (as opposed to "completely voluntary"), and the state had to assume fiduciary and administrative responsibility. *Id.* But the 2016 Safe Harbor was short-lived. Less than a year after its enactment, Congress repealed it by joint resolution under the Congressional Review Act. Pub. L. No. 115-35, 131 Stat. 848 (2017).

HJTA thus argues that Congress "specifically disavowed CalSavers by expressly repealing the 2016 DOL regulation that was designed to authorize CalSavers itself." We think, however, that this argument reads too much into Congress's rejection of the 2016 Safe Harbor. As we explained above, DOL in 2016 did not take the position that state IRA programs were preempted under ERISA absent an exemption. It merely sought to "remove uncertainty" about that question, so that states could avoid the costs and delay of ERISA preemption litigation (like this one). 81 Fed. Reg. at 59466.

We can at most conclude from Congress's repeal of the 2016 regulation that Congress rejected the notion that CalSavers should be automatically exempt from an ERISA preemption analysis. Nothing about the repeal forecasts any answer, much less any definitive answer, on whether ERISA preempts programs like CalSavers. That issue was left to the courts to resolve. And that means we must address the ERISA preemption question that the 2016 Safe Harbor might have obviated or made easier.

There is one more preliminary item before we do so, however. Assuming for a moment that CalSavers does not fall within the 1975 Safe Harbor because it is not "completely voluntary," does that mean CalSavers is then covered by ERISA and preempted? In prior cases, we have made statements such as the following: "Unless *all four* of the [1975 Safe Harbor] requirements are met, the employer's involvement in a group insurance plan is significant enough to constitute an 'employee benefit plan' subject to ERISA." *Qualls*, 22 F.3d at 843; *see also, e.g.*, *Sarraf v. Standard Ins. Co.*, 102 F.3d 991, 993 (9th Cir. 1996) ("Because [the employee organization] is not exempted by the regulation, its involvement in the plan is significant enough to make the plan an 'employee benefit plan' subject to ERISA."); *Pacificare Inc. v. Martin*, 34 F.3d 834, 837 (9th Cir. 1994) ("A plan failing to meet any one of these [safe harbor] criteria cannot be excluded from ERISA coverage."). Do these statements mean that if a plan fails to meet the 1975 Safe Harbor, it is then an ERISA plan that ERISA preempts?

The answer is no. In *Stuart v. UNUM Life Insurance Co. of America*, 217 F.3d 1145 (9th Cir. 2000), we clarified that while "[a] program that satisfies the [safe harbor] regulation's standards will be deemed not to have been 'established or maintained' by the employer[,] [t]he converse, however, is not necessarily true; a program that fails to satisfy the regulation's standards is not automatically deemed to have been 'established or maintained' by the employer, but, rather, is subject to further evaluation under the conventional tests." *Id.* at 1153 n.4 (quoting *Johnson v. Watts Regulator Co.*, 63 F.3d 1129, 1133 (1st Cir. 1995)). In other words, "[t]he fact that [a] plan is not excluded from ERISA coverage by this regulation does not compel the conclusion that the plan is an ERISA plan." *Id.* (quoting *Gaylor v. John Hancock Mut. Life Ins. Co.*, 112 F.3d 460,

463 (10th Cir. 1997)); *see also Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1230 (9th Cir. 2000) (considering the safe harbor criteria only after determining that the plan at issue fell "within the definition of" an ERISA plan).

This means that even if the 1975 Safe Harbor does not apply to CalSavers, we would still need to find that CalSavers "otherwise qualifies as an ERISA program," *Johnson*, 63 F.3d at 1133, or "relate[s] to" ERISA, 29 U.S.C. § 1144(a), to conclude that ERISA preempts it. We therefore need not decide whether the 1975 Safe Harbor would exempt CalSavers from ERISA because we hold that CalSavers is not an ERISA plan in the first place. Nor does it "relate to" ERISA plans by imposing administrative obligations on employers in California that, like HJTA, do not offer employer-sponsored retirement plans. We now turn to an explanation of these points.

## B

ERISA's preemption provision applies to "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan," as defined in ERISA. 29 U.S.C. § 1144(a). While the preemption provision is "clearly expansive," the Supreme Court has cautioned that its "relate to" language cannot be read "to extend to the furthest stretch of indeterminacy," because it would then lack any limiting principle at all. *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995).

States are not precluded from adopting a law just because it has something to do with "benefits" in a loose sense, no matter how detached the law is from ERISA's text and recognized objectives. To have "workable standards" and avoid near constant preemption ("a result [that] no sensible

person could have intended"), the Supreme Court has therefore rejected "'uncritical literalism' in applying [ERISA's preemption] clause." *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319 (2016) (quotations omitted).

ERISA applies to "*plans*, rather than simply to *benefits*." *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11 (1987). That demarcation forms the basis for the Supreme Court's cases distinguishing state laws that fall within ERISA's preemptive reach from those that are beyond it. To this end, the Court has identified "two categories of state laws that ERISA pre-empts." *Id.* "First, ERISA pre-empts a state law if it has a 'reference to' ERISA plans." *Id.* (citing *Travelers*, 514 U.S. at 656). "Second, ERISA pre-empts a state law that has an impermissible 'connection with' ERISA plans, meaning a state law that 'governs . . . a central matter of plan administration' or 'interferes with nationally uniform plan administration.'" *Id.* (quoting *Egelhoff v. Egelhoff*, 532 U.S. 141, 148 (2001)). HJTA has not shown that either test is satisfied.

1

If CalSavers "creates an ERISA plan," then it "almost certainly makes an impermissible 'reference to' an ERISA plan." *Golden Gate Rest. Ass'n v. City & Cty. of San Francisco*, 546 F.3d 639, 648 (9th Cir. 2008). But CalSavers does not order anyone to create an ERISA "employee benefit plan," as ERISA defines that term and as precedent elucidates that concept.

ERISA's preemption provision precludes state laws that "relate to any employee benefit plan." 29 U.S.C. § 1144(a). An "employee benefit plan" means either an "employee welfare benefit plan" or an "employee pension benefit plan." *Id.* § 1002(3). "Employee pension benefit plan" is the type

of plan potentially relevant to CalSavers. ERISA defines such a plan as "any plan, fund, or program which was heretofore or is hereafter *established or maintained by an employer* or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances[,] such plan, fund, or program" provides retirement income or results in deferral income by employees. *Id.* § 1002(2)(A) (emphasis added).

HJTA contends that CalSavers is an ERISA plan because it satisfies the four-factor test in *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir. 1982). Under the *Donovan* test, an ERISA plan is established "if from the surrounding circumstances a reasonable person can ascertain [1] the intended benefits, [2] a class of beneficiaries, [3] the source of financing, and [4] procedures for receiving benefits." *Id.* at 1373.

We have used the *Donovan* factors as a benchmark for assessing whether a de facto plan is an ERISA plan. *See, e.g.*, *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 321 F.3d 933, 939 (9th Cir. 2003); *Modzelewski v. Resolution Tr. Corp.*, 14 F.3d 1374, 1376 (9th Cir. 1994); *but see Golden Gate*, 546 F.3d at 652 (questioning whether the *Donovan* factors are compatible with later Supreme Court precedent on whether an informal policy is an ERISA plan). But we have never suggested that the *Donovan* factors are the "be all and end all" for whether an arrangement is an ERISA plan. That is because the *Donovan* factors presume the existence of a threshold requirement for ERISA plans: that they be "established or maintained by an employer."

As we explained in *Golden Gate*, "satisfying the *Donovan* criteria was a necessary but not sufficient condition for the creation of an ERISA plan." 546 F.3d at 652. *Donovan* is concerned with ascertaining whether a de facto

plan is an ERISA plan, once an employer decides to provide ERISA-type benefits to its employees. *See id.* (noting that *Donovan* and its progeny "all involve some type of unwritten or informal promise made by an employer to its employees"). But *Donovan* itself made clear that its criteria only come into play when "an *employer or employee organization* is the person that establishes or maintains the plan, fund, or program." 688 F.2d at 1371 (emphasis added).

The issue here is thus not whether, had an employer set up an IRA program on its own, that program would be subject to ERISA. That assumes away the central question in this appeal, which is whether a state-run IRA program like CalSavers is "established or maintained by an employer." The answer to that question is "no."

2

The ERISA-required "employer" that supposedly "established or maintained" CalSavers could only be one of two entities. The first, of course, is the State. But it seems quite clear that although California "established or maintained" CalSavers, it did not do so in the capacity of an "employer." The "established or maintained" requirement, we have explained, "appears designed to ensure that the plan is part of an employment relationship." *Charles Schwab & Co. v. Debickero*, 593 F.3d 916, 921 (9th Cir. 2010) (quoting *Peckham v. Gem State Mut. of Utah*, 964 F.2d 1043, 1049 (10th Cir. 1992)). And ERISA defines "employer" as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan." 29 U.S.C. § 1002(5). California does not employ CalSavers participants, who are by definition not governmental employees. Cal. Gov't Code § 100000(c)(1), (d). California is thus not "acting directly as an employer" through CalSavers or the CalSavers Trust.

Nor is California acting "indirectly in the interest of an employer" through CalSavers.  29 U.S.C. § 1002(5). CalSavers does not purport to provide ready access to IRAs on behalf of California employers.  *See Bleiler v. Cristwood Constr., Inc.*, 72 F.3d 13, 15 (2d Cir. 1995) (explaining that "indirectly" requires "some type of agency or ownership relationship or an assumption of the employer's functions with regard to the administration of an ERISA plan"); *Greenblatt v. Delta Plumbing & Heating Corp.*, 68 F.3d 561, 575 (2d Cir. 1995) ("It is clear that the 'in the interest of' language encompasses those who act for an employer or directly assume the employer's duty to make plan contributions.").  Nor, by its design, does CalSavers represent employers in any relevant sense.  CalSavers instead steps in where the State regards eligible California employers as having failed to provide their workers with desirable retirement savings options.

We have previously held that "a trust was not an ERISA plan because it recruited 'heterogeneous, unrelated employers.'" *Moideen v. Gillespie*, 55 F.3d 1478, 1481 (9th Cir. 1995) (quoting *Credit Managers Ass'n of S. Cal. v. Kennesaw Life & Acc. Ins. Co.*, 809 F.2d 617, 625 (9th Cir. 1987)).  The employers who are subject to CalSavers are heterogeneous and unrelated, and California has not "recruited" them at all.  Indeed, employers have no say over how CalSavers is operated; they did not create it, nor do they control it.[3]

---

[3] HJTA's reliance on *Kanne v. Connecticut Gen. Life Ins. Co.*, 867 F.2d 489 (9th Cir. 1988) (per curiam), is therefore unavailing.  In *Kanne*, construction employers created an association to administer a health plan for their employees.  *Id.* at 491.  We held that the association qualified as an ERISA "employer," which "includes a group or

If California is not the ERISA "employer," the only other entities who could fit that bill are those eligible employers who are subject to CalSavers. These entities are, of course, "employers." HJTA argues that CalSavers effectively requires these employers to "establish or maintain" ERISA plans by conscripting them into participating in CalSavers and imposing certain obligations on them. But this argument is faithful neither to CalSavers' operation nor ERISA.

There is scant case law on when an employer's required participation in a government-mandated, government-run benefits program nonetheless leads to the employer "establishing or maintaining" an ERISA plan. But the "establishment" of an ERISA plan requires both a "decision to extend benefits" and some "[a]cts or events that record, exemplify or implement the decision," such as "financing or arranging to finance or fund the intended benefits" or "establishing a procedure for disbursing benefits." *Donovan*, 688 F.2d at 1373; *see also, e.g.*, *Cinelli v. Sec. Pac. Corp.*, 61 F.3d 1437, 1442 (9th Cir. 1995). Addressing another provision of ERISA that involves "maintain[ing]" a plan, courts have relied on dictionary definitions to explain that "maintain" means to "care[] for the plan for purposes of operational productivity." *Medina v. Catholic Health Initiatives*, 877 F.3d 1213, 1226 (10th Cir. 2017); *see also Sanzone v. Mercy Health*, 954 F.3d 1031, 1041–42 (8th Cir. 2020) (similar).

The closest precedent we have to the present case is *Golden Gate Restaurant Association v. City & County of San*

---

association of employers acting for an employer in such capacity." *Id.* at 493 (quoting 29 U.S.C. § 1002(5)) (emphasis removed). CalSavers is not "acting for" eligible employers, nor is it a "group or association of employers."

*Francisco*, 546 F.3d 639 (9th Cir. 2008). *Golden Gate* involved a city ordinance that created a city-run "Health Access Plan" (HAP) for low-income residents to obtain health coverage. *Id.* at 642–43. Under the HAP, employers were required to spend a certain amount on healthcare each quarter, either by making payments into their own employee health plans or by making a payment directly to the city (the "City-payment option"). *Id.* at 643–46. Eligible employees could then enroll in the HAP and would be eligible for city-managed medical reimbursement accounts. *Id.* at 645.

We held that the City-payment option did not create an ERISA plan. *Id.* at 648–52. While employers were required to comply with certain "administrative obligations" under the HAP—such as tracking employee hours, maintaining certain records, and the like—"[t]his burden [wa]s not enough, in itself, to make the payment obligation an ERISA plan." *Id.* at 650. We explained that in the context of a government-sponsored benefit in which an employer has mandatory back-end responsibilities, "an employer's administrative duties must involve the application of more than a modicum of discretion in order for those administrative duties to amount to an ERISA plan." *Id.*

Because the employer could "make no promises to its employees with regard to the HAP or its coverage" and the city was not "act[ing] as the employer's agent entrusted to fulfill the benefits promises the employer made to its employees," we concluded in *Golden Gate* that the "the City, rather than the employer, establishes and maintains the HAP." *Id.* at 654. Consistent with case law interpreting "establish" and "maintain," *Golden Gate* stands for the proposition that an employer's non-discretionary administrative obligations under a government-mandated benefit program do not, without more, "run the risk of

mismanagement of funds or other abuse" by employers, which is ERISA's focus. *Id.* at 651.

*Golden Gate*'s holding was informed by ERISA's basic objectives, which serve as a "guide to the scope of the state law that Congress understood would survive" ERISA's preemption provision. *Gobeille*, 577 U.S. at 320 (quoting *Cal. Div. of Lab. Standards Enf't v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 325 (1997)). ERISA "seeks to make the benefits promised by an employer more secure by mandating certain oversight systems and other standard procedures." *Id.* at 320–21; *see also Fort Halifax*, 482 U.S. at 16 ("Only 'plans' involve administrative activity potentially subject to employer abuse."). When employers merely perform mandatory administrative functions in a government benefits scheme that do not require the employer to exercise "more than a modicum of discretion," *Golden Gate*, 546 F.3d at 650, the employer does not "establish or maintain" an ERISA "plan" because the employer is not engaging in the type of conduct that ERISA seeks to regulate.

Applying these principles, we conclude that in every relevant sense, it is the State that has established CalSavers and the State that maintains it—and not eligible employers. California created CalSavers. California determines the eligibility for both employers and employees. Cal. Code Regs. tit. 10, § 10000(l)–(n). California enrolls eligible employees. *Id.* § 10004. Individuals can elect to participate in CalSavers outside of the employment relationship by enrolling and making contributions via electronic funds transfer or personal check. *See* Cal. Code Regs. tit. 10, § 10006. California acts as the sole fiduciary over the trust and program, with the Board making all investment decisions (or delegating investment strategy to private

managers).   Cal. Gov't Code §§ 100002(d)–(e), 100004, 100034.  And California is "free to change the kind and level of benefits as it sees fit." *Golden Gate*, 546 F.3d at 654.  All of this confirms that "the [State], rather than the employer, establishes and maintains" CalSavers. *Id.*

That CalSavers imposes certain administrative duties on eligible employers does not mean that eligible employers complying with those obligations "establish or maintain" ERISA plans.  The role for eligible employers is limited to registering for the program; evaluating employee eligibility according to non-discretionary criteria; providing the State with employee identification and contact information; and processing specified payroll deductions according to set formulae.  Cal. Code Regs. tit. 10, §§ 10002, 10003(a)–(c).  The types of determinations employers must make under CalSavers are essentially mechanical, such as which of their employees are eighteen or older, how many people they employ, and so on. *See id*. §§ 10000(l)–(m), 10001, 10002.

It is of course true that if the State mandated that private employers provide certain retirement benefits to their employees, this would violate ERISA. *See Fort Halifax*, 482 U.S. at 16 (agreeing that requiring employers to create benefit plans "would permit States to circumvent ERISA's pre-emption provision, by allowing them to require directly what they are forbidden to regulate").  The considerations would also likely be different if employers were making discretionary judgments within a state-mandated benefits scheme.

But California has not done anything like this in CalSavers.  HJTA cites no authority suggesting that the non-discretionary administrative involvement that CalSavers requires of employers is enough to mean the employers have thereby "established or maintained" ERISA plans.  As we

explained in *Golden Gate*, "[m]any federal, state and local laws, such as income tax withholding, social security, and minimum wage laws, impose similar administrative obligations on employers; yet none of these obligations constitutes an ERISA plan." 546 F.3d at 650.

In suggesting that employers have a more substantive role in CalSavers, HJTA misstates the statutory scheme. HJTA claims, for example, that under CalSavers "the employer is managing the employee's money." But it is the CalSavers Board that does this. Cal. Gov't Code §§ 100002(d)–(f), 100010. And employers are prohibited from "[e]xercis[ing] any authority, control, or responsibility regarding the Program," except for specifically identified administrative duties. Cal. Code Regs. tit. 10, § 10003(d)(4).

HJTA also asserts that under CalSavers, employers are "obligated" to provide their employees with "guidance and opinions" and are "mandated to endorse CalSavers." But again, CalSavers in fact disallows this. Under CalSavers, eligible employers "shall not" "[r]equire, endorse, encourage, prohibit, restrict, or discourage employee participation in the Program." *Id.* § 10003(d)(1). Nor may they "[p]rovide Participating Employees . . . advice or direction regarding investment choices, Contribution Rates, participation in Automatic Escalation, or any other decision about the Program." *Id.* § 10003(d)(2). The CalSavers scheme does not give employers the expansive, discretionary role that HJTA suggests. *Cf. Simas v. Quaker Fabric Corp. of Fall River*, 6 F.3d 849, 853 (1st Cir. 1993) (holding that ERISA preempted state law that required employers to make eligibility determinations "likely to provoke controversy and call for judgments based on information well beyond the employee's date of hiring and termination"). While some

employers may find CalSavers irritating or even burdensome, that does not make their involvement in CalSavers tantamount to establishing or maintaining an ERISA plan. *See Golden Gate*, 546 F.3d at 650.[4]

Finally, HJTA errs in claiming that CalSavers forces employers to create ERISA plans because it is the employer's initial decision not to offer a tax-qualified retirement savings program that then requires it to comply with CalSavers. While HJTA's lack of a retirement plan made it subject to CalSavers, it does not follow that HJTA thereby "established or maintained" an ERISA plan. That a regulated entity is complying with a mandatory state scheme does not mean the entity "establishes or maintains" the program established by that scheme. In no sense does an eligible employer "establish or maintain" an ERISA plan through its decision *not* to establish such a plan, which is what triggers CalSavers' application.

3

Having concluded CalSavers is not an ERISA plan and does not require employers to establish or maintain one, we now turn to whether CalSavers otherwise "relates to" ERISA benefit plans because it has a forbidden "reference to" or

---

[4] HJTA argues that small employers subject to CalSavers may inadvertently establish ERISA plans if they drop below five employees. This argument is not persuasive. There is no basis for HJTA's claim that it will be "tricky" for employers to know whether they have fewer than five employees. *See* Cal. Code Regs. tit. 10, § 10001(a) (method of calculating number of employees). And if an employer's average number of employees falls below five for a calendar year, that does not mean its compliance with CalSavers then produces an ERISA plan; it merely means the employer is no longer subject to CalSavers. *See id.* § 10001(b).

"connection with" such plans. *Rutledge v. Pharm. Care Mgmt. Ass'n*, 141 S. Ct. 474, 479 (2020). We hold that HJTA's preemption challenge fails under these tests.

A state law impermissibly "refers to" ERISA "if it 'acts immediately and exclusively upon ERISA plans or where the existence of ERISA plans is essential to the law's operation.'" *Id.* at 481 (quoting *Gobeille*, 577 U.S. at 319–20). A state law has an impermissible "connection with" ERISA if it "governs a central matter of plan administration or interferes with nationally uniform plan administration," such as "by requiring payment of specific benefits or by binding plan administrators to specific rules for determining beneficiary status." *Id.* at 480 (quoting *Gobeille*, 577 U.S. at 320) (citations omitted).

HJTA has not shown that CalSavers runs afoul of ERISA in these ways. CalSavers specifically exempts those employers that "provide[] an employer-sponsored retirement plan" or "an automatic enrollment payroll deduction IRA" if "the plan or IRA qualifies for favorable federal income tax treatment under the federal Internal Revenue Code." Cal. Gov't Code § 100032(g)(1); *see also* Cal. Code Regs. tit. 10, § 10000(q) (including in the definition of "Exempt Employer" any employer that "maintains or contributes to a Tax-Qualified Retirement Plan"); *id.* § 10000(z) (defining "Tax-Qualified Retirement Plan"). HJTA thus forthrightly acknowledges that employers who provide their employees with ERISA-governed retirement plans are not subject to CalSavers.

What this means is that CalSavers does not "act on ERISA plans at all, let alone immediately and exclusively." *Golden Gate*, 546 F.3d at 657. CalSavers does not regulate ERISA plans or the benefits provided under them. Employers that offer such plans are not "force[d] . . . to

provide any particular employee benefits or plans, to alter their existing plans, or to even provide ERISA plans or employee benefits at all." *WSB Elec., Inc. v. Curry*, 88 F.3d 788, 793 (9th Cir. 1996); *see also Golden Gate*, 546 F.3d at 655 (holding that the HAP was not "in connection with" ERISA because it did not "require any employer to provide specific benefits through an existing ERISA plan or other health plan"). If an employer has an existing ERISA plan or later chooses to adopt one, CalSavers has nothing to say about those plans or their administration. Nothing in law supports HJTA's effort to recast ERISA's preemption provision as a sword that would allow employers who do not offer their own retirement plans to thereby deprive their employees of the ability to participate in a state-run IRA savings program.[5]

HJTA maintains that CalSavers nonetheless "competes with" ERISA plans and will "frustrate, not encourage the formation of" ERISA plans. Even if this were true, it does

---

[5] In its since-withdrawn amicus brief, the DOL agreed that employers with "ERISA-covered retirement plans are exempt from CalSavers." But it asserted in a footnote that employers that offer a non-automatic IRA retirement program may be covered by ERISA but "may also" be subject to CalSavers, because CalSavers provides that "[a]n employer-provided payroll deduction IRA program that does not provide for automatic enrollment" is not exempt from CalSavers. We have no occasion to consider this issue because HJTA does not offer its employees any ERISA-governed plan at all. We express no opinion on whether ERISA would preempt CalSavers insofar as it applies to employers with existing ERISA plans, assuming such a circumstance exists. We also reject as speculative HJTA's claim that California has set itself up as an "alternative adjudicator of ERISA compliance" in assessing employer exemption from CalSavers. We do not have before us a dispute between an employer and the State over whether an employer is exempt from CalSavers. We therefore do not opine on the preemption implications, if any, that such a situation could present.

not matter.  The Supreme Court has been clear that "ERISA does not pre-empt" state laws that "merely increase costs or alter incentives for ERISA plans without forcing plans to adopt any particular scheme of substantive coverage." *Rutledge*, 141 S. Ct. at 480 (citing *Travelers*, 514 U.S. at 668).  It may be that CalSavers will incentivize employers to cancel their existing ERISA plans, lead them to create ERISA plans to compete with CalSavers, or otherwise influence the benefits employers offer.  But these forms of "'indirect economic influence' d[o] not create an impermissible connection between" CalSavers and ERISA because CalSavers "d[oes] not 'bind plan administrators to any particular choice.'"  *Id.* (quoting *Travelers*, 514 U.S. at 659).

This leaves HJTA arguing that ERISA preempts CalSavers because it is "ERISA-regarding," in that California law keys eligibility for CalSavers on whether an employer offers an ERISA plan.  But that argument relies on the very "uncritical literalism" that the Supreme Court has rejected in interpreting ERISA's preemption provision. *Gobeille*, 577 U.S. at 319.

As we have previously explained, and as remains true today, "[t]he Supreme Court . . . has never found a statute to be preempted simply because its text included the word ERISA or explicitly mentioned" ERISA plans.  *WSB Elec., Inc.*, 88 F.3d at 793; *see also Hattem v. Schwarzenegger*, 449 F.3d 423, 432 (2d Cir. 2006); *NYS Health Maint. Org. Conf. v. Curiale*, 64 F.3d 794, 800 (2d Cir. 1995).  Although the Supreme Court has held that ERISA preempted state statutes when they "expressly refer[red] to ERISA plans," these state laws "also had some effect on those plans." *WSB Elec., Inc.*, 88 F.3d at 793.  Because CalSavers does not act on ERISA plans or ERISA benefits, we do not see how

CalSavers' explicit effort to wall off ERISA plans from its ambit could somehow turn out to be the very feature that leads to preemption. Nothing in principle or precedent supports such a strange result.

*Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825 (1988), on which HJTA relies, is not to the contrary. In *Mackey*, the Supreme Court held that ERISA preempted a Georgia law that specifically exempted ERISA benefits from state garnishment procedures. *Id.* at 828–29. But the law in *Mackey* did more than just expressly refer to ERISA plans: it "solely applie[d]" to ERISA plans and "single[d] out ERISA employee welfare benefit plans for different treatment." *Id.* at 829–30. That is, by exempting ERISA benefits from what was a generally applicable garnishment scheme that could otherwise apply to ERISA benefits, *see id.* at 830, the Georgia exception "act[ed] immediately and exclusively upon ERISA plans," *Dillingham*, 519 U.S. at 325 (describing the state law in *Mackey* in these terms).

The effective ERISA reference in the CalSavers exemption, by contrast, confers no such "special treatment" on ERISA benefits because it does not operate on those benefits at all. *Mackey*, 486 U.S. at 838 n.12. Unlike the Georgia garnishment exception in *Mackey*, CalSavers was not "specifically designed to affect employee benefit plans." *Id.* at 829 (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47–48 (1987)).

CalSavers is instead more akin to the exemption at issue in *Washington Physicians Service Ass'n v. Gregoire*, 147 F.3d 1039 (9th Cir. 1998), *as amended on denial of reh'g and reh'g en banc* (Aug. 24, 1998). In *Gregoire*, a statute that regulated "health plan[s]" excluded employer-sponsored plans from its ambit. *Id.* at 1043. We rejected a

preemption challenge similar to the one HJTA raises here because the law did not "operate directly" on ERISA plans. *Id.* at 1044. "In plain English," we explained, if the employer were to operate its own ERISA health benefit plan, "the Act would not apply at all, and [the employer] could structure its benefits in any way it chose." *Id.* at 1043. The same reasoning follows for CalSavers: if an employer offers its own retirement plan, CalSavers does not apply. And CalSavers does not otherwise address how the employer may structure its retirement benefits.

HJTA's reliance on *District of Columbia v. Greater Washington Board of Trade*, 506 U.S. 125 (1992), is also misplaced. In *Greater Washington*, the Supreme Court held that ERISA preempted a District of Columbia law that required employers who provided health insurance to their employees under an ERISA welfare benefit plan to provide "equivalent" coverage for injured employees eligible for workers' compensation, who were subject to plans exempted from ERISA. *Id.* at 126–28. In effect, the D.C. law required employers to extend their ERISA-governed health plans to another class of claimants. *See Curiale*, 64 F.3d at 800.

Because the D.C. law in *Greater Washington* applied only to employers with ERISA-governed plans, 506 U.S. at 130, "the existence of ERISA plans [wa]s essential to the law's operation," *Dillingham*, 519 U.S. at 325 (describing *Greater Washington*). That is not the case here because CalSavers operates where employers do *not* offer ERISA retirement plans. Unlike the D.C. law in *Greater Washington*, CalSavers "does not tell employers how to write their ERISA plans." *WSB Elec., Inc.*, 88 F.3d at 793–94 (quoting *Employee Staffing Servs., Inc. v. Aubry*, 20 F.3d 1038, 1041 (9th Cir. 1994)). Moreover, while the D.C. law "impose[d] requirements by reference" to ERISA-covered

plans, *Greater Washington*, 506 U.S. at 130–31, CalSavers ensures that employers with ERISA plans are *not* subject to additional requirements. In fact, employers who already offer qualifying plans do not even have to notify California of their exemption from CalSavers. Cal. Code Regs. tit. 10, § 10001(d).

Our decision in *WSB Electric* is instructive here. In that case, California passed a prevailing wage law, which required public works contractors to pay a minimum wage to their employees. *Id.* at 790. To comply, the contractor had to either pay the entire prevailing wage in cash or pay a base cash wage and receive credit for certain benefit contributions. *Id.* The law expressly referred to ERISA plans in determining how much credit the employer could receive for the benefit contributions. *Id.* at 793. But we rejected the argument that a reference to ERISA plans, standing alone, meant that the California wage law was preempted, because "[t]he references to ERISA plans in the California prevailing wage law have no effect on any ERISA plans." *Id.* HJTA's preemption challenge similarly identifies no effect on existing ERISA plans.

Finally, HJTA argues that multi-state employers will be forced to comply with "differing pension plan requirements in different states," contrary to ERISA's purpose of ensuring uniform rules for plan administration. But HJTA once again misstates what CalSavers requires. Employers' own retirement plans remain subject to one uniform law: ERISA. The ministerial obligations CalSavers imposes on eligible employers do not resemble the establishment or maintenance of an ERISA plan. And while HJTA protests that every state may now enact its own version of CalSavers, subjecting multi-state employers to many sets of laws, that circumstance is merely a function of our federal system, little

different than the varying state laws in other areas to which employers are already subject.

There is, to be sure, an important policy debate here. California steadfastly maintains that CalSavers is needed to address a serious shortfall in retirement savings that, if not addressed, will impose significant costs on the State years down the line. HJTA seemingly believes that state-run IRA programs reflect too great a role for government in private decision-making, while imposing too many costs on employers. But these are issues for California's lawmakers and those who elect them, or for Congress should it choose to take up this issue. The question for us is whether Congress has already outlawed CalSavers. For the reasons we have explained, HJTA's ERISA preemption challenge fails.

\*   \*   \*

The judgment of the district court is therefore

**AFFIRMED.**